No. 53,547

STATE OF KANSAS, *Petitioner,* v. JAMES R. MARTIN, *Respondent.*

(646 P.2d 459)

Opinion filed June 11, 1982.

*Roger N. Walter,* disciplinary counsel, argued the cause and was on the brief for the petitioner.

*Robert D. Ochs,* of Fisher, Ochs & Heck, P.A., argued the cause and was on the brief for the respondent.

*Per Curiam:* On January 29 and 30, 1981, a panel of the Kansas Board for Discipline of Attorneys held a hearing on a complaint against respondent James R. Martin, a member of the bar of this state, who formerly practiced in Osborne County. The panel filed its report with findings and recommendations on August 12, 1981. The matter is now before this court pursuant to Supreme Court Rule 212 (228 Kan. xcv-xcvi).

The formal complaint filed by the disciplinary administrator alleged in substance that Martin had neglected a legal matter entrusted to him to the detriment of his client, Dwight Peterson. A judgment for $19,842.12 had been entered against his client without Martin or Mr. Peterson being present at the trial. It was further alleged that sworn testimony was offered by Martin in court which testimony he knew to be false; that he advised his client Peterson to ignore a subpoena; and that Martin appeared in court in Nebraska on the same day he was scheduled to appear for trial in Kansas, after falsely advising the trial judge he was too ill to appear in court in Smith Center, Kansas.

After hearing the testimony of some 25 witnesses, the panel made findings of fact and based on those findings concluded:

"1. There is evidence in this record that Respondent advised Dwight Peterson to ignore a lawful subpoena ordering him to appear on January 10, 1980, for the trial in Case No. 78-C14. This evidence does not reach the standard of clear and convincing evidence and accordingly that issue is resolved in favor of Respondent.

"2. There is evidence in this record that Respondent made material and serious misrepresentation to Judge Charles Worden during a telephone conversation on the evening of January 9, 1980. This evidence does not reach the standard of clear and convincing evidence and accordingly that issue is resolved in favor of the Respondent.

"3. There is clear and convincing evidence, indeed compelling evidence, that Respondent was guilty of professional misconduct in the following particulars:

482

"(A) Violation of DR6-101(a)(3) and DR7-101(A)(3) by the Respondent's total neglect of Dwight Peterson's interests in Case 78-C14 which interests Dwight Peterson had entrusted to Respondent. This total neglect caused judgment to be rendered against Dwight Peterson for $19,842.12 together with interest and costs while at the same time Dwight Peterson was denied his 'day in court,' all as detailed in the findings of fact above.

"(B) Violation of DR6-101(A)(2) by Respondent's failure to prepare any defense in Case 78-C14 for and on behalf of Dwight Peterson prior to January 10, 1980, and/or by Respondent's failure to refer his responsibility for preparation of the defense of Dwight Peterson to another competent counsel.

"(C) Violation of DR1-102(A)(5) by Respondent's failure to timely file a motion for continuance of the trial in 78-C14 upon the grounds that Respondent's health was sufficiently impaired to preclude his availability for trial on January 10, 1980, which motion should have been set for hearing pursuant to court rule, notice of the hearing given to all counsel, and medical submitted to the court at the time of hearing sufficient to sustain the allegation of disability.

"(D) Violation of DR7-102(A)(3) by Respondent's failure to disclose to Dwight Peterson and to Judge Charles Worden that Respondent was going to Nebraska on January 10, 1980, promptly upon Respondent deciding to make said trip."

The first conclusion of the panel exonerated respondent because of conflicting evidence on the subject. Peterson testified that Martin advised him to ignore a subpoena and Martin testified he did not advise Peterson to do so. The clear and convincing standard of proof was not met.

The second conclusion of the panel resulted when the trial judge testified that Martin advised him he was too ill to appear in court in Smith Center on January 10, yet Martin appeared in Kansas City on business for his bank the day before and he appeared at a sentencing hearing in Nebraska on the day of the trial. Martin, on the other hand, introduced evidence that he was in ill health on those dates from pneumonia and from injuries received in a car wreck occurring on December 1, a month and ten days prior to the date set for the trial of the Peterson matter. He testified he was physically unfit to try the case on January 10.

After considering the various conflicts in the evidence concerning misrepresentations made to the judge, the panel concluded the evidence was not clear and convincing on the first two conclusions.

In support of the third conclusion the panel found:

"1. On April 28, 1978, James L. Bush of Windscheffel and Bush, Chartered, filed a suit styled 'Smith Center Co-op Mill and Elevator, Plaintiff, v. Dwight and Don Peterson, Defendants, No. 78-C14' (hereafter 78-C14), filed in the District

Court of Smith County, Kansas. The case was thereupon assigned to Judge Charles E. Worden.

"2.   Dwight Peterson, one of the above Defendants, retained James N. Reardon of Bloomer, Bloomer and Bloomer, Osborne, Kansas, to represent him. Thereafter, Mr. Reardon left Osborne and arranged for Robert Bloomer to represent Mr. Peterson.

"3.   On October 12, 1979, Mr. Bloomer was permitted to withdraw as counsel for Mr. Peterson following his recommendation to settle made to Mr. Peterson who refused to accept said recommendation.

"4.   Near the middle of October, 1979, Mr. Peterson retained Respondent to represent him in 78-C14. Respondent agreed to represent Dwight Peterson through trial in the District Court on payment of a fee in the amount of $1,000.00. Mr. Peterson paid Respondent said $1,000.00, one-half at their first conference and the balance within 30 days thereafter.

"5.   On November 7, 1979, and following two conferences between Respondent and Mr. Peterson, both appeared before Judge Worden on plaintiff's motion for a jury trial. During that appearance the case was scheduled for trial beginning in the morning of January 10, 1980. Thereafter, Mr. Peterson conferred once more with Respondent at which time Respondent advised he was closing his office and moving to Hutchinson but stating that he would handle Mr. Peterson's defense.

"6.   During November, 1979, Respondent closed his law office in Osborne and moved his residence to Hutchinson with the plan of resuming his law practice in Hutchinson.

"7.   Respondent did not prepare any defense for Dwight Peterson and made no analysis or recommendations to either settle or to try Case 78-C14. Respondent did not notify Dwight Peterson of his new address or telephone number at Hutchinson.

"8.   On December 1, 1979, Respondent was involved in an automobile accident. He suffered a fracture of six ribs, a blow and cut to the head and injuries to his leg, all of which required five days of hospitalization. During his hospitalization and through the month of December and into January, Respondent was treated by Wilbur P. Neel, M.D., of Hutchinson.

"9.   On December 15, 1979, Respondent drove or was driven the 130 miles from Hutchinson to Osborne to hand out Christmas bonus checks to employees of the First State Bank which Respondent controlled.

"10.   On December 19, 1979, at the request of Respondent, Judge Worden granted a continuance in a criminal case which was scheduled for trial beginning December 21, 1979. Respondent, at that time, advised Judge Worden that he could do nothing until the first of the year. Judge Worden conditioned his agreement to continue the case upon Respondent furnishing to the Court a medical report.

"11.   By letter dated December 20, 1979, Dr. Neel advised that Respondent would be unable to return to full time work before January 1, 1980. This letter was not filed with the District Court until January 18, 1980, and then as an attachment to Respondent's motion for a new trial on behalf of Dwight Peterson. Respondent did not offer any competent medical evidence from any of his treating physicians which would alter Dr. Neel's opinion that Respondent could resume his law practice after January 1, 1980.

"12.   On December 26, 1979, Respondent accompanied his two sons on an

automobile trip to Colorado so that his sons would have the ski trip promised them. They returned to Hutchinson by automobile three or four days later. Respondent did not ski.

"13. Respondent did not provide Judge Charles Worden with any medical evidence whatsoever of his physical disability or alleged disability prior to January 18, 1980.

"14. On January 3, 1980, Respondent drove or was driven to Osborne for a previously scheduled meeting with officials of the First State Bank of Osborne.

"15. On January 8, 1980, Respondent flew from Hutchinson to Kansas City, Missouri, for an important morning and afternoon meeting on January 9, 1980, regarding capital deficiencies at the First State Bank of Osborne.

"16. On January 8, 1980, Dwight Peterson was served with a subpoena commanding his appearance in 78-C14 for 9:00 o'clock A.M. on January 10, 1980. The subpoena was issued at the request of counsel for Plaintiff.

"17. On January 8 and 9, 1980, Dwight Peterson attempted to locate Respondent concerning trial of 78-C14. On January 9th Mr. Peterson tried the First State Bank at Osborne thinking Respondent had some connection with the bank. He located Respondent's former law secretary, who was now a bank employee, at the bank and told her of his concern. The secretary Debbie Anderson, inquired of a bank officer who called Respondent at Kansas City some time between 11:00 o'clock A.M. and noon on January 9th. Respondent, by telephone, requested Miss Anderson call Judge Worden and ask for a continuance in 78-C14. Judge Worden inquired of Miss Anderson where Respondent was, called Respondent at Kansas City and found that Respondent had already left his morning meeting. Thereupon, Judge Worden denied the request for continuance. Dwight Peterson was then instructed to go home and assured that Respondent would call later that afternoon or that evening.

"18. Respondent called Judge Worden at his parents' home at 8:00 o'clock P.M. on January 9, 1980, advising that he was not well enough to attend the trial scheduled for the next day. Judge Worden recalled that on December 19th Respondent advised he would be able to practice after the first of the year; Judge Worden recalled his request for medical on December 19, 1979, which was not filed or provided; Judge Worden knew that Respondent had been in Kansas City, Missouri, that day; taking these three factors into account plus Respondent's failure to file a motion for continuance and noticing the same for hearing and also because of the lateness of the hour with reference to a trial which had been scheduled more than two months previously, Judge Worden denied the request for continuance.

"19. Respondent then called Dwight Peterson at approximately 8:30 P.M. on January 9th to advise him that the Court had denied his request for continuance; that Respondent was unable to appear for the trial the next morning because of his ill health; that he had not been in contact with Dwight Peterson earlier because of his ill health and that he did not understand the Court's refusal of a continuance. Respondent advised Mr. Peterson that he would not appear for trial the following morning.

"20. On the morning of January 10, 1980, Respondent flew to Cedar County, Nebraska, located in the farthest Northeast Corner of that state, to appear for a sentencing in a criminal case where the defendant had been found guilty some

two months earlier. (*State of Nebraska v. Richard L. McCoy*, No. 6658.) Respondent was one of two attorneys appearing in person for the defendant in Cedar County that day.

"21.   On January 10, 1980, Case 78-C14 was tried before Judge Worden with all parties and counsel present except Respondent and Dwight Peterson. Following presentation of evidence, the Court found the co-defendant had no liability to plaintiff and granted plaintiff judgment against Dwight Peterson for $19,842.12, interest and costs.

"22.   Dwight Peterson thought he owed a feed bill somewhere between $4,000 and $8,000 and felt that the interest he had been charged was excessive. Mr. Peterson felt that plaintiff was charging for more feed than delivered and imposing interest charges greater than permissible. For these reasons Dwight Peterson had retained Respondent and paid the $1,000 fee quoted for his defense in the trial in Case 78-C14.

"23.   Dwight Peterson has hired new counsel and appealed from the above judgment, which appeal is pending. In addition, Dwight Peterson has filed an action for malpractice against Respondent which is pending."

The foregoing findings are supported by clear and convincing evidence, except for certain inconsequential matters not material to the panel's conclusions. These findings support the third conclusion of the panel. Martin neglected his client's interests and this neglect resulted in a judgment against his client for $19,842.12, without any defense being prepared and without the appearance of Martin at the trial. The date of trial, January 10, 1980, had previously been set at a pretrial conference on November 7, 1979, over two months before.

The respondent filed exceptions to the report of the hearing panel quarreling largely with failure of the panel to include in its findings certain mitigating circumstances claimed by respondent to have caused or contributed to his failure to properly represent and protect his client.

Petitioner's behavior unquestionably constitutes serious misconduct. Failure to communicate with and inattention to the needs of a client, standing alone, constitute proper grounds for discipline. *State v. Goering*, 230 Kan. 561, 639 P.2d 1130 (1982); *State v. Richardson*, 230 Kan. 23, 631 P.2d 221 (1981). Similarly, discipline has been imposed for accepting compensation for legal services but failing to render such services. *Grove v. State Bar*, 66 Cal. 2d 680, 683, 58 Cal. Rptr. 564, 427 P.2d 164 (1967). Even if an attorney's misconduct is not willful or dishonest, gross carelessness and negligence constitute a violation of the oath of an attorney to "discharge your duties as an attorney . . . to the best of your knowledge and ability." The attorney-client rela-

tionship is a fiduciary one which binds the attorney to the highest degree of fidelity to the client's interest. *Doyle v. State Bar,* 15 Cal. 3rd 973, 126 Cal. Rptr. 801, 544 P.2d 937 (1976). When an attorney's failure to render services is combined with failure to communicate with the client and with misrepresentation severe discipline is justified. In deciding what discipline is warranted each case must be decided on its own facts and there are no fixed standards as to appropriate discipline.

In *State v. Scott,* 230 Kan. 564, Syl. ¶ 4, 639 P.2d 1131 (1982), we set forth mitigating factors to be considered in determining the nature and extent of the discipline for a breach of professional responsibility. Those factors listed are:

"(1) Whether restitution has been made; (2) previous violations or the absence thereof; (3) previous good character and reputation in the community; (4) the present and past attitude of the attorney as shown by his cooperation during the hearing and acknowledgement of the transgression; (5) letters from clients, friends and lawyers in support of the character and general reputation of the attorney; and (6) any statement by the complainant expressing satisfaction with restitution and requesting no discipline." 230 Kan. 564, Syl. ¶ 4.

In addition to this list of mitigating factors is the factor of personal misfortunes of the attorney if such misfortunes have contributed to violation of the code of professional responsibility. All such mitigating factors will not excuse a violation and are to be considered only when determining the nature and extent of discipline to be administered. Annot., Attorney - Negligence - Discipline, 96 A.L.R. 2d 823, § 14, p. 855. See also *Matter of McCallum,* 289 N.W.2d 146 (Minn. 1980); *Matter of Naughton,* 51 App. Div. 2d 337, 381 N.Y.S.2d 525 (1976); *Riccio v. New York State Bar Ass'n,* 56 App. Div. 2d 668, 391 N.Y.S.2d 199 (1977); and *In re Chapman,* 69 Ill. 2d 494, 372 N.E.2d 675 (1978).

In the present case there was no medical testimony by a licensed doctor as to respondent's physical and mental condition during the critical period from November to and including January 10, the date of the trial. Respondent testified to having pneumonia and being hospitalized from December 1 to December 5 as a result of a car wreck. He testified that he had received a head concussion and fractured ribs. He was taking a drug called percodan during this entire period. Friends of respondent verified his appearance of suffering pain; however, others testified he appeared to be physically and mentally normal.

There was evidence introduced before the panel that respon-

dent took his two boys on a ski trip to Colorado from December 26 to December 30. There was further testimony he made several trips to Osborne during December and passed out Christmas bonus checks to the employees of his bank. From November 7 to January 7 or 8, respondent did nothing to prepare a defense, to obtain a continuance, or to withdraw from the case. On January 7 or 8 he first attempted to contact the trial judge. On January 9 respondent and others in the Osborne bank flew to Kansas City and appeared before the regional director of the Federal Deposit Insurance Corporation. The bank was under a cease and desist order due to the dishonesty of a former president of the bank. At 8:30 p.m. on January 9, Martin contacted the trial judge by telephone and asked for a continuance of the Peterson trial. The judge refused because the oral request was untimely and a previous request for medical documentation of his physical and mental condition had not been supplied in a previous case. Martin denied that the judge had made such a request. Martin failed to advise the judge that he was going to fly to Nebraska on the 10th of January to appear at a sentencing hearing.

In mitigation respondent testified he was mentally and physically unfit to do business during the period from December 1 to January 10, 1980. He further testified he had closed his office in Osborne and had not re-established his office anywhere else. He is now practicing at Hutchinson, Kansas.

The nonattention to his client's case, for which he had received a $1,000.00 retainer, contributed to the judgment against Dwight Peterson. Peterson testified that execution was issued on the $19,842.12 judgment and a quarter of his farm land was sold to satisfy the judgment.

After hearing all witnesses, the panel recommended that respondent be indefinitely suspended from the practice of law because of his misconduct. After considering evidence in the transcript it appears to this court that such discipline is justified. However, because of respondent's personal problems which existed during the period in question it may be that respondent can or will correct these problems and be able to properly attend to his duties as an attorney in the future.

Therefore, it is considered, ordered and adjudged that James R. Martin be and he is hereby suspended from the practice of law for an indefinite period. Costs of this proceeding are taxed to the

respondent. Because of the mitigating circumstances respondent is advised his application for reinstatement may be filed with this court and will be considered after the expiration of one full year from the date this opinion is filed.