No. 67,826

IN THE MATTER OF DAVID W. CARSON, *Respondent.*

(845 P.2d 47)

Opinion filed January 22, 1993.

*Stanton A. Hazlett,* deputy disciplinary administrator, argued the cause and was on the brief for petitioner. *Bruce E. Miller,* disciplinary administrator, was with him on the formal complaint.

*John H. Fields,* of Carson & Fields, of Kansas City, argued the cause and was on the brief for respondent.

*Per Curiam:* A formal disciplinary complaint was brought against David W. Carson on May 23, 1990, in connection with his financial and legal dealings with a client, Thelma L. (Sue) Phillips. This discipline case is the second appearance of Carson before us as a result of his relationships with Phillips. In *Phillips v. Carson,* 240 Kan. 462, 731 P.2d 820 (1987) (*Carson I*), the trial court entered summary judgment against Carson, finding that he had been professionally negligent. In *Carson I,* we stated, in affirming summary judgment: "We agree with the trial court that Carson's extensive breaches of the Code of Professional Responsibility proximately cased injury to his client, and that she sustained substantial actual damages." 240 Kan. at 478.

As to the complaint in this disciplinary case, a hearing panel of the Kansas Board for Discipline of Attorneys (the panel) unanimously determined that Carson violated:

DR 1-102(A)(1) and (6) (1992 Kan. Ct. R. Annot. 189):

"A lawyer shall not: (1) Violate a Disciplinary Rule. . . . (6) Engage in any other conduct that adversely reflects on his fitness to practice law."

DR 5-101(A) (1992 Kan. Ct. R. Annot. 209):

"Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests."

DR 5-104(A) (1992 Kan. Ct. R. Annot. 210):

"A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented after full disclosure."

DR 6-101(A)(3) (1992 Kan. Ct. R. Annot. 214):

"A lawyer shall not: . . . (3) Neglect a legal matter entrusted to him."

DR 7-101(A)(1) and (3) (1992 Kan. Ct. R. Annot. 219):

"A lawyer shall not intentionally: (1) Fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules, except as provided by DR 7-101(B). A lawyer does not violate this Disciplinary Rule, however, by acceding to reasonable requests of opposing counsel which do not prejudice the rights of his client, by being punctual in fulfilling all professional commitments, by avoiding offensive tactics, or by treating with courtesy and consideration all persons involved

in the legal process. . . . "(3) Prejudice or damage his client during the course of the professional relationship, except as required under DR 7-102(B)."

and DR 7-102(A)(8) (1992 Kan. Ct. R. Annot. 219):

"In his representation of a client, a lawyer shall not: . . . (8) Knowingly engage in other illegal conduct or conduct contrary to a Disciplinary Rule."

The panel considered evidence in mitigation and unanimously recommended that Carson be disciplined by suspension from the practice of law for a period of two years pursuant to Supreme Court Rule 203(a)(2) (1992 Kan. Ct. R. Annot. 153). Carson has filed exceptions to both the findings and the discipline recommended.

We have examined the record and find substantial competent evidence to support the findings of fact and conclusions of law of the panel, which we unanimously adopt.

### "FINDINGS OF FACT

"The panel unanimously concludes that there is clear and convincing evidence to establish the following findings of fact:

"1. Respondent is an attorney at law. . . .

"2. On March 28, 1984, Thelma L. (Sue) Phillips commenced civil litigation against Respondent in the District Court of Johnson County, Kansas, in the case of *Thelma L. Phillips v. David W. Carson, et al.,* Case No. 129,377. Mrs. Phillips was granted judgment against the Respondent in the amount of $378,107.45 plus interest from May 9, 1985, at the statutory rate. The lawsuit against the Respondent was based upon his allegedly negligent handling of legal duties associated with personal loans which the Respondent obtained from Mrs. Phillips, a client and friend. The Honorable Lewis C. Smith, Judge of the District Court of Johnson County, Kansas, entered summary judgment for Mrs. Phillips against the Respondent on September 2, 1985.

"3. Respondent appealed the granting of summary judgment against him. The Kansas Supreme Court affirmed the ruling against Respondent in the case of *Phillips v. Carson,* 240 Kan. 462, 731 P.2d 820 (1987). In the decision of the Court authored by Justice Robert H. Miller, the Kansas Supreme Court held that Respondent's 'extensive breaches of the Code of Professional Responsibility proximately caused injury to his client, and that she sustained substantial actual damages.' 240 Kan. at 478.

"4. The findings of the Kansas Supreme Court as set forth in the case of *Phillips v. Carson,* 240 Kan. 462, 731 P.2d 820 (1987), are adopted in their entirety and incorporated by reference as if fully set forth in this Report.

### "CONCLUSIONS OF LAW

"Respondent's actions with respect to the handling of legal matters on

behalf of Thelma L. (Sue) Phillips do amount to a violation of [the Canons previously referenced]."

A majority of the court disagrees with the panel's discipline recommendation. Suspension from the practice of law for a period of one year under Rule 203(a)(2) is the discipline imposed by a majority of the court.

The issues are: (1) Was Supreme Court Rule 202 (1992 Kan. Ct. R. Annot. 152) properly applied; (2) was Carson's motion to dismiss erroneously denied; (3) were the Disciplinary Administrator's exhibits (Phillips' affidavit and her suggested findings submitted to the trial court in *Carson I*) properly admitted into evidence; (4) did delay in filing the complaint and bringing the matter to hearing prejudice Carson, making the imposition of discipline inequitable; (5) did the evidence presented meet the clear and convincing standard, which is required for a finding of attorney misconduct; (6) should a new hearing before a different disciplinary panel have been ordered following one member's recusal; (7) would the imposition of discipline violate Carson's rights secured by the federal Bankruptcy Code and the Supremacy Clause of the United States Constitution; and (8) is the discipline recommended by the panel more harsh than justified by the facts?

## Facts

The Disciplinary Administrator's Office claimed that the hearing panel should look at *Carson I* and apply our Rule 202. Among other things, Rule 202 states: "All other civil judgments shall be prima facie evidence of the findings made therein and shall raise a presumption as to their validity. The burden shall be on the respondent to disprove the findings made in the civil judgment." Carson objected to the use of Rule 202. The panel made no explicit statement in the final hearing report regarding its decision as to the applicability of Rule 202. However, the panel unanimously adopted the findings of *Carson I* in their entirety and incorporated them by reference in the final hearing report. In *Carson I,* we observed that Carson had not challenged "any of the facts relating to his conduct and business and professional relationship with Mrs. Phillips" or "the accuracy of the 29 paragraphs of findings of fact included within the trial court's order."

240 Kan. at 473. The findings in *Carson I* explain the factual details of Carson's dealings with Phillips. 240 Kan. at 467-70 (the reader is referred to *Carson I* for a fuller understanding of the Carson-Phillips, attorney-client, borrower-lender, mortgagor-mortgagee relationships). Other findings of fact appear in the panel's final report.

Carson filed a response during the investigation of the complaint. The first hearing was conducted on October 30, 1990, before a disciplinary panel appointed by the Chair of the Kansas Board for Discipline of Attorneys (KBDA). The panel members were Robert E. Nugent, III, Ann L. Hoover, and Michael J. Grady, Chair.

The Disciplinary Administrator called Mark Gunnison as a witness. Gunnison is a member of the law firm (McDowell, Rice and Smith, Chartered) that filed the attorney malpractice suit for Phillips against Carson. Phillips was called to testify during the presentation of Carson's evidence. She indicated that she had nothing to do with the disciplinary proceeding and had never wanted such an action to occur. At the time of her testimony before the panel, Phillips, due to health problems, was under the guardianship of her brother. Phillips also stated that at the time she made the first loan to Carson, she felt free to consult another attorney and that no one had ever suggested that she should not do so.

Carson testified that he did not solicit Phillips, his client, for the $200,000 loan. He only told her that he was having a terrible time financially, and she asked him if he wanted a loan. Carson also stated that he did not feel it was necessary to tell Phillips to see another attorney because he knew that she was acquainted with many lawyers with whom she could discuss the loan transaction. He testified that he never discouraged Phillips from contacting another attorney about the transaction. Carson also stated that he did not believe he was acting as Phillips' lawyer in any of the loan transactions. (A second loan was for $70,000.)

Carson testified that the mortgage on the Wyandotte County property was not recorded because he did not have the money to do so. He further testified that it was his feeling that the failure to record the mortgage was not significant because he had no intention of placing any mortgages in front of Phillips' mort-

gage. Carson expressed his belief that he had done all he could to protect the mortgage. When cross-examined, Carson admitted that he gave no advice to Phillips regarding obtaining an independent title examination or appraisal of the property.

The Chair, at the completion of respondent's evidence, admitted the evidence Carson had objected to and denied the motion to dismiss filed by Carson. Carson requested that the panel take judicial notice of *In re Estate of Phillips*, 4 Kan. App. 2d 256, 604 P.2d 747, *rev. denied* 227 Kan. 927 (1980), and moved for the admission into evidence of three depositions, including that of Phillips' close friend, Patricia H. Higgins. The evidence was admitted. Carson then moved for the admission of a court reporter statement and deposition of Phillips. The Disciplinary Administrator objected. The Chair announced, and the panel concurred, that the proposed evidence should not substitute for or supplement the live testimony. Admission of the court reporter statement and Phillips' deposition was denied. Higgins, in her deposition, stated that Phillips had discussed with her over the telephone the circumstances surrounding Phillips' loan to Carson. Higgins told Phillips that when someone has a second mortgage they have to pay off the first in order to "realize." She indicated that she believed Phillips understood this fact. Higgins also indicated that she believed the loans were strictly personal and would have been made even if Carson had not been acting as Phillips' attorney.

The panel agreed to accept correspondence in mitigation and the hearing was adjourned. The issues were taken under advisement. On November 2, 1990, Michael Grady advised the parties that, unknown to him, one of his law partners had written a legal opinion for the attorneys representing Phillips during the pendency of *Carson I.* At Carson's request, Grady recused himself, advising the parties by letter dated December 5, 1990, that no consensus or decisions were reached by the panel following the October 30, 1990, hearing.

On December 21, 1990, Mary K. Babcock was appointed to replace Grady. The Chair of the KBDA directed that a transcript of the hearing be furnished to Babcock for her to study and directed that: (1) the panel confer with the view towards completing the panel report; (2) if the original panel members, Hoover

and Nugent, agreed regarding the findings and recommendations, a rehearing of all the evidence on the charges would not be required (if the remaining original panel members disagreed, then a rehearing would be necessary); and (3) the panel was not precluded from receiving, as it deemed appropriate, evidence in mitigation if misconduct was found.

On January 14, 1991, the panel convened in Wichita. The panel unanimously found that Carson had violated the disciplinary rules. The parties were advised the panel would receive evidence in mitigation at a subsequent hearing, if Carson so desired. Carson requested such a hearing, which was held on February 25, 1991, in Topeka. Carson objected to the procedure, contending that he should be allowed a rehearing on all of the charges. The panel overruled the objection. The hearing proceeded with the presentation of mitigating evidence. Additional mitigating evidence was furnished to the panel, by agreement of the parties, after the hearing. The Disciplinary Administrator informed the panel of the private censure and informal admonition which Carson had received on July 14, 1989, in a matter unrelated to Phillips.

Carson offered three exhibits, including two letters from people formerly on the Kansas City Kansas Junior College Board of Trustees which indicate that in 1984 the Junior College was willing to purchase the land that secured Phillips' mortgage for a price high enough to have paid all the mortgages on the property. Carson argued that the two letters supplied mitigating evidence on the question of injury mentioned in the ABA Standards for Imposing Lawyer Sanctions. The third exhibit is a statement by Phillips prepared after the first hearing in this action. The Disciplinary Administrator's objection to the three exhibits was sustained.

Phillips testified at the mitigation hearing on Carson's behalf. She stated that Carson "is one of the best friends my husband and I ever had, and I don't want to see any harm come to him, none at all." Carson testified that "at no time did [he] ever intend to in any way damage Mrs. Phillips." He stated that he did, in fact, "regret extremely what has happened." Regarding the recording of the mortgage, Carson indicated that he believed "that as far as the Recording Acts were concerned, as long as I didn't place a—put another mortgage in or try to sell a property or do

anything, that as far—her mortgage still stayed in place." He testified that "[he] tried to protect [Phillips]." He further stated that "this has been a very traumatic experience, as you can all imagine, all the way down the line. I have two stress-related illnesses that have derived from it. One is a triple bypass, which I had in May of 1989, and the other is diabetes. . . . [T]his whole matter has hung over me and hung over me." Carson admitted that he should have recorded the mortgage. He also replied, when questioned as to whether he would take the loan from Phillips today, that he would not do so. He noted that the loan "was a mistake on my part. A serious mistake, even though this lady came in and proffered the money. If she were to do that, no I would—under no circumstances would I accept the loan. Although at the time I did not feel that there was anything illegal about it, I wouldn't take the loan, no way." Carson went on to remark that, in his mind, there was "no question that [his] financial circumstances at that time had something to do with [his] accepting the loan."

The final hearing report was filed on March 19, 1992. The panel dismissed a claimed violation of Canon 9 finding no evidence that Carson violated Canon 9 (1992 Kan. Ct. R. Annot. 231).

## Standard of Review

In *State v. Klassen*, 207 Kan. 414, 415, 485 P.2d 1295 (1971), we explained that we have a "duty in a disciplinary proceeding to examine the evidence and determine for ourselves the judgment to be entered." In *State v. Zeigler*, 217 Kan. 748, 755, 538 P.2d 643 (1975), this court stated that, although the report of the disciplinary board "is advisory only, it will be given the same dignity as a special verdict by a jury, or the findings of a trial court, and will be adopted where amply sustained by the evidence, or where it is not against the clear weight of the evidence, or where the evidence consisted of sharply conflicting testimony." See *In re Farmer*, 242 Kan. 296, 299, 747 P.2d 97 (1987).

## Rule 202

Carson argues that even though the panel did not expressly rule on the application of Rule 202, the panel's report indicates

that the rule was used to raise an improper presumption as to the validity of our findings in *Carson I.* The Disciplinary Administrator responds that the panel never invoked Rule 202, so the burden of proof did not shift to Carson. The panel, in its findings of fact, simply adopted our *Carson I* findings in their entirety. Additionally, the Disciplinary Administrator points out that he did not exclusively rely on *Carson I* in presenting the case. Documents from *Carson I* and the testimony of Mark Gunnison were presented. The Disciplinary Administrator notes that the panel's report explicitly concluded that the case had been proved by clear and convincing evidence. The panel's report makes no mention of shifting the burden to Carson or that Carson had not overcome the burden that would have been placed on him by Rule 202.

The panel report does not indicate that Rule 202 was relied upon. The disciplinary case did not solely consist of the judgment in *Carson I.* The actual facts surrounding the Phillips loan transactions have never been in dispute. A presumption has not been used improperly as evidence. Prior findings of fact in *Carson I,* which were based on evidence, function as evidence in the disciplinary matter. Additionally, Carson did not show that the burden of proof was shifted by the panel. We observe, however, even if Rule 202 had been implicitly followed and the burden had been shifted to Carson to disprove the findings made in *Carson I,* it would have been entirely consistent with the language of the rule. Carson has not advanced a persuasive argument for the invalidity or impropriety of Rule 202. The validity of Rule 202 is upheld.

## Carson's Motion to Dismiss

Carson argues that charges of attorney misconduct must, according to Rule 211(f) (1992 Kan. Ct. R. Annot. 167), be established by clear and convincing evidence. He reasons that the clear and convincing requirement is greater than the level of proof required in an ordinary civil action, citing *In re Ratner,* 194 Kan. 362, 366, 399 P.2d 865 (1965). According to Carson, clear and convincing evidence refers to a quality of proof. Carson asserts that Phillips' *Carson I* affidavit failed the credibility test. He also says that Gunnison's testimony before the panel fails the

"distinctly remembered" test because it was marked by expressions such as "believed", "he thought," and "don't know" or "don't recall." Carson does not give specific references to this testimony. The Disciplinary Administrator contends that Carson's argument assumes that the only evidence presented by the Disciplinary Administrator was *Carson I.* Additional evidence was presented. The Disciplinary Administrator emphasizes that the findings of fact made in *Carson I* were not disputed or challenged by Carson. According to the Disciplinary Administrator, undisputed and unchallenged facts meet any burden of proof.

We have repeatedly said that "[t]he standard of proof to warrant a finding of attorney misconduct requires that the charge be established by substantial, clear, convincing, and satisfactory evidence. [Citations omitted.]" *In re Smith,* 243 Kan. 584, 585, 757 P.2d 324 (1988). This requirement stems, at least in part, from the fact that a judgment against an attorney may deprive him or her of a good reputation or even a means of livelihood. *In re Ratner,* 194 Kan. at 366. The panel's report explained that the panel was "persuaded by clear and convincing evidence." Carson does not dispute the events surrounding his dealings with Phillips. The panel properly denied Carson's motion to dismiss. A review of the record endorses the panel's "clear and convincing" findings.

### The *Carson I* Exhibits

Phillips' *Carson I* affidavit described the loan transaction. Phillips' *Carson I* suggested findings of fact and the affidavit were admitted over Carson's objection at the disciplinary hearing. Carson argues that Phillips' affidavit is inadmissible hearsay. He states that the only hearsay exception he believes applies is K.S.A. 1991 Supp. 60-460(a), previous statements of persons present. Regarding the *Carson I* suggested findings, Carson asserts that they were hearsay and nothing more than the opinions of Phillips' lawyers. Carson reasons that the *Carson I* exhibits were prejudicial because they constituted the only direct factual evidence before the panel. According to Carson, Phillips' suggested findings from *Carson I* were also prejudicial because they lack specific references to the record. The Disciplinary Administrator argues that both exhibits were a part of the official record in *Carson I.* Consequently, both exhibits were relevant. Additionally, Carson

did not object to the petition filed in *Carson I* which contained the same information as Phillips' *Carson I* affidavit. Carson had an opportunity to examine Phillips regarding the *Carson I* exhibits at the disciplinary hearing because she was present and testified.

Our Rule 211(d) (formal hearing) states that "[t]he hearing shall be governed by the Rules of Evidence as set forth in the Code of Civil Procedure." We hold that the panel has the authority to take notice of relevant court records. This authority is implicitly granted in Rule 202, which provides in part, "civil judgments shall be prima facie evidence of the findings made therein . . . ." Rule 202 would be meaningless if records from prior civil judgment cases were not admissible in disciplinary proceedings. Carson has not presented a compelling argument as to why he was prejudiced by the admission of the two *Carson I* exhibits.

## Delay

Carson alleges that this case has been marked by delay. We agree. Approximately 10 years lapsed between the time of the first loan to Carson from his client Phillips and the disciplinary panel report. We do not condone the delay, on the contrary, we are perplexed by it. Carson argues that between the time of the loan and the disciplinary hearing, Phillips had become incapacitated and, consequently, was placed under a guardianship. He says that although Phillips "had fought back and was able to testify, she was not the person she had been prior to her illness." Carson asserts that Phillips' lack of capacity was harmful to his case. Carson also points out that "[w]hile no statute of limitations is applicable to disciplinary actions, charges may become so stale that it would be inequitable to act upon them." Carson says that he promptly responded to requests by the Disciplinary Administrator's Office. He argues that the delay violated his fundamental rights and, consequently, the disciplinary action should be dismissed.

The Disciplinary Administrator explains the chronology of events. The delay occurred primarily during the investigation. According to the Disciplinary Administrator, for delay to justify dismissal in a disciplinary action, some prejudice to the party asserting the delay defense must be shown. The Disciplinary Administrator argues that the delay may actually have benefited

Carson because the testimony by Phillips at the disciplinary hearing occurred after the two had reconciled. He maintains that Carson failed to prove any prejudice due to Phillips' loss of capacity. He argues that delay does not justify the dismissal of the case because the overriding purpose of a disciplinary proceeding is the protection of the public, and that the disciplinary rules do not include any type of statute of limitations. See *In re Matney,* 241 Kan. 783, 792, 740 P.2d 598 (1987).

While in some instances a delay in the proceedings may justify the dismissal of disciplinary actions, there must be a showing of prejudice to the party asserting such delay as a defense. *Matney,* 241 Kan. at 792. Although this case is unlike *Matney* in that Matney himself was a primary source of the delay, Carson has failed to convincingly show how his case was prejudiced. *Carson I* serves as a major basis for the instant disciplinary proceeding. The evidence presented in *Carson I* was not stale. The factual basis for the disciplinary proceeding was preserved when the memory of the witnesses was still fresh. Additionally, Carson alleges without an accompanying precise explanation, that delay violated his fundamental rights.

### The Clear and Convincing Standard

Carson alleges that the findings of the disciplinary panel were not supported by clear and convincing evidence. He states that he did not have a chance to contest the accuracy of the findings of fact in *Carson I* which were adopted by the panel. He asserts that circumstances which existed at the time of *Carson I* prevented him from challenging the facts. Carson argues that the *Carson I* summary judgment should not have been granted. He states that clear and convincing evidence does not exist in the disciplinary action despite the fact that we upheld summary judgment in *Carson I.*

There is sufficient substantial evidence, of a clear and convincing nature, to support findings that Carson violated the rules identified by the panel. The hearing panel explicitly stated that it was basing its judgment upon clear and convincing evidence.

### Should a New Hearing Before a Different Panel Have Been Ordered Following One Member's Recusal?

Rule 211(a) states that formal disciplinary hearings "shall be conducted by a panel of three attorneys." Carson argues that the intent of this rule is "to ensure a just result in disciplinary cases by calling on the collective wisdom and experience of three panel members." Carson's premise is that the decision-making process among the panel is dialectical. He asserts: "A single astute and articulate fact finder can show his [or her] fellow factfinders that their position is fallacious and cause them to change their vote." He views a factfinder who has not actually heard the testimony as being at a disadvantage. Additionally, Carson points out that our rules neither make any provision for a hearing by less than three panel members, nor provide for reading the transcript in lieu of a hearing.

The Disciplinary Administrator emphasizes that no consensus or decision had been reached at the time Grady recused himself. The Chair of the KBDA required that there be a rehearing if the original panel members were in disagreement on the findings and recommendations. When the panel convened in January 1991, it made a unanimous finding that Carson had violated the disciplinary rules.

The Disciplinary Administrator underscores our Rule 224(d) (1992 Kan. Ct. R. Annot. 186), which states that if a procedural variation is to justify dismissal of a disciplinary action, a respondent must show actual prejudice by clear and convincing evidence. The Disciplinary Administrator argues that Carson did not prove that prejudice occurred. We agree. Babcock, who replaced Grady, had an opportunity to read the entire transcript and to review exhibits. This was not a case where the panel was required to assess the credibility of witnesses. The Phillips-Carson multifaceted relationship detailed in *Carson I* was admitted to by Carson. No actual prejudice has been shown.

## The Bankruptcy Code and The Supremacy Clause

Carson implies that the disciplinary action was brought about "directly by reason" of his seeking protection under the federal bankruptcy code. He suggests that the instant action violates both his rights under the Bankruptcy Code and under the Supremacy Clause (Art. 6, cl. 2) of the United States Constitution. Carson's argument as flawed. Carson appears to claim that he was singled

out for prosecution in the disciplinary case because he had not paid a debt. Carson's ethical transgressions preceded his filing for bankruptcy. Carson's bankruptcy/Supremacy Clause argument is not persuasive.

## The Discipline Recommended by the Panel

Carson observes that we have set out the mitigating factors to be considered in determining the nature and extent of discipline for a breach of professional responsibility:

"(1) Whether restitution has been made; (2) previous violations or the absence thereof; (3) previous good character and reputation in the community; (4) the present or past attitude of the attorney as shown by his cooperation during the hearing and acknowledgement of the transgression; (5) letters from clients, friends and lawyers in support of the character and general reputation of the attorney; and (6) any statement by the complainant expressing satisfaction with any restitution made and requesting no discipline." *State v. Scott,* 230 Kan. 564, 572, 639 P.2d 1131 (1982).

Another factor, the "personal misfortunes of the attorney if such misfortunes have contributed to violation of the code of professional responsibility," was added to the list in *State v. Martin,* 231 Kan. 481, 486, 646 P.2d 459 (1982). Carson asserts that disciplinary panels and courts look to the ABA Standards for Imposing Lawyer Sanctions (1991) in determining the appropriate discipline. Carson argues that his conduct should be covered by ABA Standard § 4.33 (Reprimand) or 4.34 (Admonition).

Carson addresses aggravating or mitigating circumstances. He states that the panel mentioned prior discipline as an aggravation factor. According to Carson, "[t]he 'prior discipline' was imposed in July 1989 concerning conduct of an entirely different character that occurred long after the incidents involved in this case. According to Carson, "[t]here was 'prior discipline' in this case, but only because the case moved so slow."

Carson points to a variety of mitigating factors: (1) personal, financial problems; (2) timely, good faith effort to make restitution in the form of the appeal of the bankruptcy court's order avoiding Phillips' mortgage; (3) full and free disclosure to discipline investigators and total cooperation; (4) good character and reputation attested to by many letters; (5) the proceedings have been a severe ordeal, hanging over his head since the time the initial complaint

was filed in 1985; and (6) interim rehabilitation—he is not likely to do this again.

In response to the panel's claim that it "was deeply troubled by respondent's obvious lack of remorse and unwillingness to admit his own wrongdoing," Carson states:

"Any party who defends against a charge in the genuine belief that he is not guilty is subject to the criticism that he is unwilling to admit his wrongdoing. However, the willingness or unwillingness to admit wrongdoing is not dispositive on the question of remorse. . . . [H]e expressed his extreme regret about what happened."

Carson asserts that "he recognizes that taking the loan was a serious mistake." Consequently, Carson believes that the discipline in this case should not exceed a reprimand. The panel took into consideration the magnitude of the violations and was disturbed by the fact that the disciplinary rules were violated by a "very experienced attorney who should have known better." The panel did not believe that either the payment Phillips received from Carson's malpractice carrier or the apparent reconciliation by Phillips with Carson prior to the time of the hearing rectified Carson's behavior.

According to the Disciplinary Administrator, Carson's conduct "is covered by ABA Standard 4.0, Violations of Duties Owed to Clients. Specifically, ABA Standard 4.3, Failure to Avoid Conflicts of Interest, and ABA Standard 4.4, Lack of Diligence" apply to the instant case. The Disciplinary Administrator emphasizes that we held in *Carson I* that Carson "breached his duties with respect to his client by failing to advise Mrs. Phillips of the legal ramifications of the loan transactions, in failing to advise her of the legal consequences of the changes in security, and in failing to recommend that she secure independent counsel. [*Carson I*, 240 Kan.] at 478." According to the Disciplinary Administrator, Carson's conduct fits in the category described in ABA Standard 4.31: "Disbarment is generally appropriate when a lawyer, without the informed consent of client(s): (a) engages in representation of a client knowing that the lawyer's interests are adverse to the client's with the intent to benefit the lawyer or another, and causes serious or potentially serious injury to the client." Additionally, the Disciplinary Administrator indicates that Carson's failure to record the mortgage is covered by ABA Standard 4.4,

Lack of Diligence. We agree with the characterization of Carson's conduct advanced by the Disciplinary Administrator.

IT IS THEREFORE ORDERED that David W. Carson be and he is hereby suspended from the practice of law in the State of Kansas for a period of one year.

IT IS FURTHER ORDERED that David W. Carson shall forthwith comply with Supreme Court Rule 218 (1992 Kan. Ct. R. Annot. 176).

IT IS FURTHER ORDERED that this order shall be published in the official Kansas Reports and that the costs of this action be assessed to the respondent.

Effective this 22nd day of January, 1993.