No. 74,367

In the Matter of STEVEN A. KRAUSHAAR, *Respondent*.

(907 P.2d 836)

Opinion filed December 8, 1995.

*Stanton A. Hazlett*, deputy disciplinary administrator, argued the cause, and *Bruce E. Miller*, disciplinary administrator, and *Marty M. Snyder*, deputy disciplinary administrator, were with him on the formal complaint for the petitioner.

*John J. Ambrosio*, of Topeka, argued the cause for the respondent, and *Steven A. Kraushaar*, respondent, argued the cause pro se.

ABBOTT, J.: This original proceeding in discipline was filed by the office of the Disciplinary Administrator against Steven A. Kraushaar, respondent, a Marysville attorney who is the Marshall County Attorney, alleging multiple violations of the Model Rules of Professional Conduct (MRPC).

The respondent stipulated to the controlling facts and specific violations as set forth in Counts II, III, and IV of the formal complaint. Count I was dismissed by the Disciplinary Administrator.

## COUNT II

In early 1990, while county attorney of Marshall County and having a statutory duty to prosecute child in need of care cases, respondent contacted a Social and Rehabilitation Services (SRS) employee who was conducting an investigation of a mother for possible neglect of her two children. Respondent informed the SRS employee he represented the mother and appeared with the mother as her attorney at a meeting with the SRS employee representing the mother's interests in the child in need of care investigation.

Respondent stipulated that a conflict existed because he was county attorney and had a statutory duty to prosecute child in need of care cases and represented a client who was being investigated for possible neglect of her children by SRS, all in violation of

MRPC 1.7(a) (1994 Kan. Ct. R. Annot. 313) (the conflict of interest rule).

## COUNT III

Respondent also stipulated he violated MRPC 3.5(d) (1994 Kan. Ct. R. Annot. 354), which prohibits a lawyer from engaging in undignified or discourteous conduct degrading to a tribunal.

Respondent stipulated that he had engaged in the following conduct:

A. Appearing in court in blue jeans, a torn shirt, and filthy.

B. Announcing to participants in litigation outside of the courtroom that he hoped the matter before the court would be concluded soon because he wanted to get drunk.

C. Discussing his sexual needs during a conference in chambers with Judge Elizabeth Carleen and defense counsel present.

D. During a hearing, jumping over the railing that separates the courtroom from the area for the seating of spectators and witnesses.

E. Making the statement during a sentencing that he did not care what the court did in response to a question from the court about the respondent's recommendation for sentencing.

## COUNT IV

The respondent, while county attorney, refused to file a child in need of care action at the request of the stepfather of a client who was terminally ill unless he was paid $1,000. The district court judge appointed a local attorney as special prosecutor (after the client's death), who handled the child in need of care action.

Respondent stipulated that his demand he be paid $1,000 before he would file a child in need of care case violated MRPC 8.4(g) (1994 Kan. Ct. R. Annot. 379), which prohibits a lawyer from engaging in conduct that adversely reflects on his or her fitness to practice law, and further violated K.S.A. 19-705, which reads:

"No county attorney shall receive any fee or reward from or on behalf of any prosecutor or other individuals, except such as are allowed by law for services in any prosecution or business to which it shall be his official duty to attend, nor be concerned as attorney or counsel for either party, other than the state or county,

in any civil action depending upon the same state of facts upon which any criminal prosecution, commenced but undetermined, shall depend; nor shall any county attorney while in office be eligible to or hold any judicial or other county office whatsoever."

## MITIGATION

The hearing panel found the following matters in mitigation:

a. Absence of prior disciplinary record.
b. Absence of dishonest or selfish motives.
c. Inexperience in the practice of law.
d. Remorse.
e. Acceptance of responsibility for his acts.

The hearing panel recommended that respondent be disciplined by public censure and that he appear in open court and personally apologize to Judge Elizabeth Carleen for his conduct. The office of the Disciplinary Administrator recommends that this court accept the recommendation.

All members of the court view respondent's conduct as being more egregious than conduct where published censure is imposed. A majority of the court concludes that respondent's violations are a severe breach of the Model Rules of Professional Conduct, but the violations are not of the kind and character that would warrant suspension from practice or disbarment.

IT IS THE ORDER OF THE COURT that the imposition of discipline against Steven A. Kraushaar be and hereby is suspended, and he is placed on probation for 2 years from the date of this opinion.

IT IS FURTHER ORDERED that respondent not violate the Model Rules of Professional Conduct and that in addition to meeting his CLE requirements, he shall attend the 2-hour ethics program designed for county and district attorneys at both the 1996 spring meeting (to be held in Lawrence, Kansas) and 1996 fall meeting (to be held in Wichita, Kansas) of the Kansas County and District Attorneys Association. Respondent shall furnish the Disciplinary Administrator with proof of attendance.

IT IS FURTHER ORDERED that respondent appear in open court and personally apologize to Judge Elizabeth Carleen for the conduct respondent stipulated to in Count III and furnish to the Disciplinary Administrator, at respondent's expense, a transcript of the apology.

IT IS FURTHER ORDERED that in the event respondent fails to abide by the conditions set forth herein, a show cause order will issue to respondent and this court will take whatever disciplinary action it deems just and proper without further formal proceedings.

IT IS FURTHER ORDERED that this order be published in the official Kansas reports and that respondent pay the costs of these proceedings.

SIX, J., dissenting: I would impose the sanction of suspension from the practice of law for 1 year.

Steven A. Kraushaar worked 1 year in the Kansas City area after receiving his undergraduate degree before enrolling in law school. He graduated from law school in May 1985. Kraushaar entered private practice with a firm in Chanute, Kansas, where he remained for 6 months. Kraushaar learned of an opening in Marysville, Kansas, in the office of Kenneth Moses. He started practicing in Moses' office either in December of 1985 or January of 1986. He worked with Moses until Moses retired in 1989. At the time of the conduct described in Counts II and IV (1990), he knew of the option to contact the Attorney General's office or the county commissioners to ask for appointment of a special prosecutor. He had done that before but would "always get a lot of flack when [he hired] a special prosecutor because it's paid by the county funds, [and] the commissioners don't like it." He has been Marshall County Attorney since 1986.

I now turn to the allegations of the formal complaint *admitted* by Kraushaar.

## COUNT II

The substance of Kraushaar's admissions under this count has been stated in the majority opinion.

## COUNT III

"11. The Honorable Elizabeth Carleen is a District Magistrate Judge in the Twenty-Second Judicial District. The respondent regularly appears in her court. On various occasions the respondent has engaged in undignified or discourteous conduct which was degrading to Judge Carleen's tribunal. Those instances of conduct are described as follows:

"A. Appearing in court in blue jeans, a torn shirt and filthy.

"B. Announcing to participants in litigation outside of the courtroom that he hoped the matter before the court would be concluded soon because he wanted to get drunk.

"C. Discussing his sexual needs during a conference in chambers with Judge Carleen and defense counsel present.

"D. During a hearing, jumping over the railing that separates the courtroom from the area for the seating of spectators and witnesses.

"E. Making the statement during a sentencing that he didn't care what the court did in response to a question from the court about the respondent's recommendation for sentencing."

## COUNT IV

"12. The respondent represented an individual by the name of Linda Mallory. Ms. Mallory had two (2) children, Christine and Barbara. Ms. Mallory found out that she was dying of cancer and was concerned about the custody of her children after her death. Ms. Mallory was afraid that her ex-husband would obtain custody of the children. Linda Mallory's brother contacted Stephen Boyda, an attorney in Marysville, and discussed this problem with Mr. Boyda.

"13. After speaking with Linda Mallory's brother, Mr. Boyda received a call from Linda Mallory. Mr. Boyda told her that she should contact the respondent. The respondent was then the county attorney of Marshall County. Mr. Boyda suggested to Ms. Mallory that a child in need of care case might be appropriate. Mr. Boyda then called the respondent and told him that Ms. Mallory was going to be calling him. During the conversation, Mr. Boyda told respondent that a child in need of care case would be appropriate under the circumstances and that the case should be filed prior to Ms. Mallory's death so that she could be a witness in the case.

"14. On August 20, 1990, an individual named Vic Perez went to Mr. Boyda's office. Mr. Perez is the step-grandfather of Christine and Barbara and step-father of Linda Mallory. Mr. Perez told Mr. Boyda that Linda Mallory had died and that the children were now with their father. Mr. Perez was concerned for the safety of the children. Mr. Perez had gone to discuss the situation with the respondent prior to talking to Mr. Boyda. He informed the respondent of his concern for the safety of Christine and Barbara. Mr. Perez was told by the respondent that he would not take any action on the case unless he was paid a $1,000.00 retainer. Mr. Perez then reported this development to Mr. Boyda.

"15. Mr. Boyda then went to the County Attorney's Office to discuss the situation with the respondent. Mr. Boyda asked the respondent if he thought it would be appropriate to file a child in need of care case with respect to the children. The respondent told Mr. Boyda that he was too busy to file anything soon and that he was tired of handling this particular type of case. Mr. Boyda asked the respondent if it were true that he had requested a $1,000.00 retainer of Mr. Perez to file a child in need of care case. The respondent answered that it was true and told Mr. Boyda that he wasn't going to file anything unless he received a retainer of $1,000.00. Mr. Boyda told the respondent that he felt it was the responsibility of the county attorney to file child in need of care cases and charging a fee for that service would be inappropriate. The respondent told Mr. Boyda that he was tired of being involved in custody disputes and that nothing was going to be filed unless he received some money.

"16. In a later conversation with Mr. Boyda, the respondent told Mr. Boyda that the appropriate course of action to be taken would be a determination of custody in a divorce case or a guardianship filing. Mr. Boyda indicated to the respondent that he (Mr. Boyda) did not think that either a guardianship or post-divorce action would be helpful in this case. The respondent again refused to file a child in need of care case.

"17. Mr. Boyda prepared the child in need of care documents on behalf of Vic Perez. He then took the documents to Judge Keith Sprouse and informed the judge why he had prepared the documents. Judge Sprouse called the respondent and asked him to come to the judge's chambers. The respondent came and there was a discussion between the respondent, Mr. Boyda and Judge Sprouse. Judge Sprouse determined that an independent prosecutor should be appointed to pursue the child in need of care case.

"18. The respondent refused to perform duties required of him by statute in the position of county attorney. The respondent informed individuals that a fee would be charged for filing a child in need of care case. The respondent's demand for compensation for a function which was his official duty to attend violates K.S.A. 19-705."

As county attorney, Kraushaar was the chief law enforcement officer of Marshall County when he committed the actions he has admitted are disciplinary violations. His license to practice law qualified him for the office. The license and the office require a high standard of conduct in order to preserve the public trust in the profession and respect for our system of justice. *In re Diehl*, 243 Kan. 580, 582, 757 P.2d 732 (1988).

We have imposed suspensions for 1 year in two cases filed this date, *In re Geeding*, 258 Kan. 740, 907 P.2d 124 (1995), and *In re Eastepp*, 258 Kan. 766, 907 P.2d 842 (1995). See also *In re*

*Gershater*, 256 Kan. 512, 886 P.2d 343 (1994), and *In re Carson*, 252 Kan. 399, 845 P. 2d 47 (1993), for two of our numerous 1-year suspension cases. We have also imposed a 1-year suspension in *In re Wood*, 247 Kan. 219, 221, 794 P.2d 660 (1990) (the panel's unanimous recommendation was public censure), and in *In re King*, 253 Kan. 444, 451, 855 P.2d 963 (1993) (one panel member recommended public censure).

I am unable upon review of Kraushaar's admissions under Count IV to impose any sanction less than suspension for 1 year. Kraushaar, as county attorney, told two persons (Perez and Boyda) on separate occasions that he would not file a child in need of care case unless he was paid $1,000. See K.S.A. 19-705.

Kraushaar admitted violating MRPC 8.4(g) (1994 Kan. Ct. R. Annot. 379) (Count IV). His conduct adversely reflected on his fitness to practice law. In addition, he violated K.S.A. 19-705 (no fees are to be received by a county attorney, except as are allowed by law, for any prosecution or official business). A portion of the MRPC 8.4 commentary states:

"Lawyers holding public office assume legal responsibilities going beyond those of other citizens. A lawyer's abuse of public office can suggest an inability to fulfill the professional role of attorney. The same is true of abuse of positions of private trust such as trustee, executor, administrator, guardian, agent and officer, director or manager of a corporation or other organization." (1994 Kan. Ct. R. Annot 380).

The Count III admissions of discussing his sexual needs in chambers when appearing before District Magistrate Judge Elizabeth Carleen and also commenting to participants in litigation that he hoped the matter would be concluded soon because he wanted to get drunk compound Kraushaar's situation.

MCFARLAND, C.J., and DAVIS, J., join the foregoing dissenting opinion.