No. 74,365

In the Matter of DOUGLAS DEAN EASTEEP, *Respondent*.

(907 P.2d 842)

Opinion filed December 8, 1995.

*Stanton A. Hazlett*, deputy disciplinary administrator, argued the cause, and *Mark F. Anderson*, disciplinary administrator, was with him on the formal complaint for petitioner.

No appearance by respondent.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against Douglas Dean Eastepp, an attorney admitted to the practice of law in Kansas. Respondent is also admitted to the practice of law in Colorado and was registered as a resident of Colorado Springs at all pertinent times herein.

On November 7, 1994, the Colorado Supreme Court suspended respondent from the practice of law for a period of 3 months for ethical violations. *People v. Eastepp*, 884 P.2d 305 (Colo. 1994). Respondent self-reported the Colorado disciplinary action to the Clerk of the Appellate Courts of the State of Kansas, and these proceedings were then commenced.

The opinion of the Colorado Supreme Court sets forth the underlying facts as follows:

"The respondent was the president of Colorado Concrete Manufacturing Company (CCMC) in Colorado Springs. He owned twenty-six percent of the shares of CCMC, and the remaining shares were owned by Mr. and Mrs. Don Hogue of Topeka, Kansas, the parents of the respondent's former wife. The respondent had been previously involved in two other companies with the Hogues, and he sold his shares in those companies to the Hogues at book value.

"In 1980, the respondent and the Hogues executed a buy and sell agreement, which allowed CCMC to purchase the stock of a deceased stockholder, and which was to be funded by the proceeds of life insurance policies that CCMC purchased for each stockholder. The Hogues also executed personal guarantees on loans made to CCMC. The hearing board found that, upon the Hogues' deaths, their interest in CCMC would be purchased by CCMC with the respondent as the

remaining shareholder, but the Hogues' estates would remain liable for the indebtedness.

"From 1980 through 1989, CCMC operations expanded three-fold, and the respondent earned a good business reputation. In 1989, however, CCMC experienced severe financial difficulties due to decreasing construction in the Colorado Springs area. The company remained solvent because the Hogues infused money into the business. The Hogues became concerned, however, about the increased indebtedness of the company for which they were liable. With the advice and active involvement of their lawyer, they asked the respondent to terminate the buy and sell agreement. The respondent steadfastly refused and the relationship between the respondent and the Hogues deteriorated.

"The Hogues hired a consultant to review CCMC's finances, who recommended that the company sell assets, including three company vehicles. The Hogues and their lawyer instructed the respondent in May 1989 to sell the vehicles, one of which was a 1985 Lincoln Continental Town Car that the respondent was using as a company car. The blue book value of the Lincoln was approximately $9,000.

"Instead of selling the vehicles as instructed, the respondent and a relative (another CCMC employee), took them to an automobile dealer in order to have titles created showing a transfer of the vehicles to the dealer. The respondent signed assignments of title showing transfers of the vehicles to an automobile auction company in May 1989. The respondent then engaged in a transaction designed to appear as if a third party purchased the Lincoln from the dealer for $500. The respondent sent a letter to the consultant, with copies to Mr. Hogue and his lawyer, indicating that he had disposed of the vehicles as instructed.

"The respondent in fact retained possession of the Lincoln, and put about 500 miles on the car before he placed it on a consignment lot. The respondent's relative and another CCMC employee kept the other two vehicles, which had been their company cars. In August 1989, the respondent told his relative to modify certain documents and to have the three vehicles titled and recorded in the names of three other persons so that the respondent and the other CCMC employees would not appear as the vehicle owners in any public documents.

"The relationship between the Hogues and the respondent did not improve, and the respondent's employment was terminated in early August 1989. The Hogues denied liability for unemployment benefits and refused to pay the respondent any pension benefits. The respondent was later awarded unemployment benefits, and a referee for the Division of Employment and Training concluded that the respondent was forced to quit because of the pressure exerted by the Hogues regarding the company's finances and the buy and sell agreement.

"The respondent repeatedly informed the Hogues and their lawyer that he had sold the Lincoln to the automobile auction company. Because the purported purchase price was far less than the actual value of the vehicle, however, the Hogues hired a private investigator, who found the Lincoln for sale on the consignment lot for $10,000. The investigator also discovered that the Lincoln had been placed

on the consignment lot by the respondent, although it was titled in the name of a third person. The Hogues' lawyer asked the district attorney in Colorado Springs to investigate the matter, and in about September of 1989 the respondent admitted to the detective assigned to the case that he had never sold the vehicles. The respondent subsequently returned the Lincoln to CCMC, and it was later sold for $7,500. The district attorney elected not to file criminal charges against the respondent.

"In addition, shortly after he left CCMC, the respondent gained access to the company offices after business hours and took some original financial statements. He had asked for copies of those statements before, but they had not been provided. About a week after he took them, the respondent returned the documents before the company discovered they were missing." 884 P.2d at 305-07.

### In the Colorado proceeding, the following then occurred:

"The respondent admitted, and the hearing board found, that the foregoing conduct violated DR 1-102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); and DR 1-102(A)(6) (a lawyer shall not engage in conduct that adversely reflects on the lawyer's fitness to practice law). The hearing board also determined that the respondent violated C.R.C.P. 241.6(3) (misconduct involving any act or omission violating the highest standards of honesty, justice or morality is grounds for discipline).

"In addition, the hearing board concluded that the respondent's conduct violated C.R.C.P. 241.6(5). The fact that no criminal charges were filed against the respondent would not preclude a finding that he had violated C.R.C.P. 241.6(5) (any act or omission violating the criminal laws of a state or of the United States constitutes ground for lawyer discipline; provided that conviction thereof in a criminal proceeding shall not be a prerequisite to the institution of disciplinary proceedings, and provided further that acquittal in a criminal proceeding shall not necessarily bar disciplinary action); *People v. Morley*, 725 P.2d 510, 514 (Colo. 1986) (conviction of criminal offense is not a condition precedent to attorney disciplinary proceedings involving the offense, nor is acquittal a bar). The majority of the board found that the respondent violated the felony theft and felony aggravated motor vehicle theft statutes." 884 P.2d at 307.

The only exception filed by respondent in Colorado challenged the finding by a majority of the board that respondent's actions involved criminal conduct. The Colorado Supreme Court upheld the majority as to criminal conduct being involved and suspended respondent for a period of 3 months. Respondent was reinstated in Colorado on March 8, 1995.

Supreme Court Rule 202 (1994 Kan. Ct. R. Annot. 188) provides, *inter alia*:

"A final adjudication in another jurisdiction that a lawyer has been guilty of misconduct shall establish conclusively the misconduct for purposes of a disciplinary proceeding in this state."

The hearing panel herein adopted the Colorado findings as its own and recommended respondent be suspended from the practice of law for a period of 1 year. We accept that recommendation.

IT IS THEREFORE ORDERED that Douglas Dean Eastepp be suspended from the practice of law for a period of 1 year in accordance with Supreme Court Rule 203(a)(2) (1994 Kan. Ct. R. Annot. 189).

IT IS FURTHER ORDERED that Douglas Dean Eastepp shall forthwith comply with Supreme Court Rule 218 (1994 Kan. Ct. R. Annot. 217) as to any Kansas clients.

IT IS FURTHER ORDERED that this order be published in the official Kansas Reports and that the costs of the proceeding be assessed to respondent.