The PEOPLE of the State of
Colorado, Complainant,

v.

James W. PHELPS, Attorney–
Respondent.

No. 92SA63.

Supreme Court of Colorado,
En Banc.

Sept. 21, 1992.

Linda Donnelly, Disciplinary Counsel, Jay P.K. Kenney, Asst. Disciplinary Counsel, Denver, for complainant.

James W. Phelps, pro se.

PER CURIAM.

In this attorney disciplinary proceeding, a hearing panel of the Supreme Court Grievance Committee approved the findings and recommendation of a hearing board that the respondent, James W. Phelps, be suspended from the practice of law for one year and one day and be assessed the costs of this proceeding. We approve the hearing panel's recommendations.

I

The respondent was admitted to the bar of this court on March 5, 1951, is registered as an attorney upon this court's official records, and is subject to the jurisdiction of this court and its grievance committee. C.R.C.P. 241.1(b). At his request, the respondent was placed on inactive status on February 20, 1991. *See* C.R.C.P. 227(A)(6).

II

The complaint filed herein charged the respondent with violations of DR 1–102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation); DR 1–102(A)(6) (engaging in conduct that adversely reflects on the lawyer's fitness to practice law); and C.R.C.P. 241.6(5) (violating the criminal laws of a state or of the United States by act or omission). After considering the testimony of witnesses called on behalf of the complainant and the respondent, including testimony by the respondent himself, and after reviewing documentary evidence introduced by both parties, the hearing board found that the following facts had been established by clear and convincing evidence.[1]

III

Since his admission to the bar in 1951, the respondent has primarily been engaged in real estate, insurance and investment businesses. He operates an entity known as FCA, Inc., a Colorado nonprofit corporation, that employs various trade names, including S Y H, Inc. According to the

---

1. The respondent filed exceptions in this court to the findings and recommendation of the hearing board. The exceptions were subsequently stricken, however, because the respondent did not file a designation of record within ten days after filing of the exceptions and did not request preparation of a transcript of the proceedings as required by C.R.C.P. 241.-20(b)(4). The respondent's exceptions primarily addressed findings of fact made by the board on the basis of conflicting testimony. When approved by the hearing panel, the board's factual findings are binding on this court unless, after considering the record as a whole, the findings are unsupported by substantial evidence. *People v. Dieters*, 825 P.2d 478, 481 (Colo.1992); *People v. Bennett*, 810 P.2d 661, 665 (Colo.1991). When acting as a fact finder, the hearing board has the duty to assess the credibility of evidence before it, controverted and uncontroverted. *People v. Distel*, 759 P.2d 654, 662 (Colo.1988). Because the respondent has not filed a transcript of the hearing before the board we cannot conclude that the board's findings are not supported by the record.

respondent, "S Y H, Inc." stands for "Sell Your Home, Inc."

In 1989, the respondent placed a classified advertisement seeking houses or town houses encumbered by Federal Housing Administration (FHA) loans. The respondent advised persons who answered the advertisement that by transferring to him property with a value less than the balance of the mortgage encumbering the property they could abandon the property and avoid the adverse effects on their credit ratings of a foreclosure proceeding or a deed in lieu of foreclosure transaction.

Thomas R. Green responded to the advertisement, and on July 18, 1989, the respondent offered, on behalf of SYH, Inc., to accept a duplex owned by Green located in Commerce City, Colorado. The duplex was encumbered with a first mortgage held by Commercial Federal Mortgage Corporation. The mortgage was FHA insured and subject to assumption without qualification. Green was experiencing financial problems and was falling behind on his mortgage payment obligations. The respondent's written offer to Green stated in pertinent part:

S Y H, Inc., will accept your property at 5821 E. 68th Ave., including appliances and window coverings subject to your FHA loan if payments are current.... If closed by Aug. 1 we would pay the August mortgage payment and collect the August rent.

We cannot and will not guarantee that the property will never be foreclosed on, but we do give you the following assurances.

1. We will try to sell your property at a small profit—usually less than most companies charge for a sales commission. If we don't succeed in selling it we will offer the mortgage company a deed in lieu of foreclosure.

2. We do not believe that your credit should be or will be damaged in the event the property is foreclosed on at any time in the future. It is true that any foreclosure action will name the original borrower but no stigma should attach to the original borrower for a fore-

closure due to a subsequent owner's default. If anything ever appears on your credit report of a derogatory nature we suggest you demand the report show that the loan was current when you sold the property and that the default occurred at a time when you had no ownership rights and no effective right or duty to reclaim the property.

3. Exhaustive legal research has failed to find a single case where the FHA has ever obtained a deficiency judgement against a previous owner. As a real estate broker for over 37 years it is my belief that the reason for this is that mortgage insurance premiums have been paid on FHA loans and that these premiums are used to pay any losses resulting from foreclosures.

We cannot guarantee what any government agency will or will not do in the future but we do believe that any attempt to hold a mortgagor (borrower) liable would be illegal. When you buy insurance against any loss and your insurance company pays a loss, they (sic) cannot recover their (sic) payment from the person who paid the premium.

We do guarantee that your property will be transferred out of your name within a very few days after you sign the transfer documents and we will send you a copy of the recorded deed. We also guarantee that we will notify your mortgage company of the transfer and send them (sic) the loan transfer fee and a copy of the recorded deed.

On or about July 24, 1989, Green deeded the property to S Y H, Inc., which deed was recorded on July 26, 1989. The respondent executed requisite documents sent to S Y H, Inc. by Commercial Federal and returned those documents, together with a copy of the warranty deed, to Commercial Federal.

The monthly mortgage payment totalled approximately $750. The respondent made only one such payment, but continued to collect monthly rental payments from two tenants occupying the duplex until January 1990. Those rental payments totaled approximately $650 each month. Except for

approximately $1,000 expended for repairs to the duplex, the monthly rental payments were deposited into an FCA, Inc. account. The funds were ultimately used to support other properties owned by FCA, Inc. and for various charitable activities.

The respondent made only minimal efforts to resell the property, and in February of 1990 Commercial Federal commenced foreclosure proceedings. Although the foreclosure did not result in a deficiency, a deficiency was recorded on Green's credit record. Green retained an attorney, and the apparently erroneous entry on his credit record was ultimately corrected.

On December 6, 1990, The United States Department of Housing and Urban Development (HUD) issued to the respondent and his various entities a "limited denial of participation" letter. The letter listed more than sixty properties with respect to which the respondent or his entities had assumed FHA loans and defaulted on the loans, leading to foreclosures. As a result of this action, the respondent was excluded from participation in HUD programs because he and his entities were found to be "unsatisfactory insurance risks and because of irregularities in [the respondent's] past performance in a HUD program...."

The respondent argued before the hearing board that he had not "assumed" the loan on the Green property or on any other property listed in the HUD letter, but rather obtained title to the properties "subject to" existing encumbrances. The hearing board concluded that the respondent did not assume the Commercial Federal loan to Green. The hearing board found, however, that on numerous occasions the respondent would take a deed to property subject to an FHA loan, make one mortgage payment, and then allow the property to go into foreclosure, resulting in a loss to HUD. The hearing board also found that the respondent was familiar with the prohibitions against equity skimming contained in section 18–5–802, 8B C.R.S. (1988 Supp.), as that statute existed prior to the addition of amendments thereto effective July 1, 1989.

## IV

"Equity skimming is the practice of diverting revenues generated by mortgaged property in default to purposes other than property maintenance or mortgage payments." *United States v. Capano,* 786 F.2d 122, 122 (3d Cir.1986); *see generally* Heidi Roberts O'Connor & Jerry C.M. Orten, *Equity Skimming: A Crisis in Residential Real Estate,* 19 Colo.Law. 871 (May 1990). Equity skimming is prohibited by federal as well as state legislation.[2] *See* 12 U.S.C. § 1709–2 (1988); *United States v. Laykin,* 886 F.2d 1534, 1537 (9th Cir.1989), *cert. denied,* 496 U.S. 905, 110 S.Ct. 2586, 110 L.Ed.2d 267 (1990); H.R.Rep. No. 91–1556, 91st Cong., 2d Sess. (1970), *reprinted in* 1970 U.S.C.C.A.N. 5582, 5650. The Green property was transferred to S Y H, Inc. on or about July 24, 1989. Section 18–5–802 was amended, effective July 1, 1989, in part by the addition of a requirement that a purchaser of property provide the seller thereof with a statutorily prescribed written warning. *See* ch. 148, secs. 73, 156, 157, § 18–5–802, 1989 Colo.Sess.Laws 838, 861. As amended, section 18–5–802 provides in pertinent part as follows:

**Equity skimming of real property.** (1) A person commits the crime of equity skimming of real property if he knowingly:

(a) Acquires an interest in real property which is encumbered by a loan secured by a mortgage or deed of trust and the loan is in arrears at the time he acquires the interest or is placed in default within eighteen months after acquiring such interest in real property; and

(b) Fails to apply all rent derived from his interest in the real property first toward the satisfaction of all outstanding payments due on the loan and second toward any fees due to the association of real property owners which charges such fees for the upkeep of the housing facility, or common area including buildings and grounds thereof, of which the real property is a part before appropriating

**2.** The complaint in this grievance proceeding did not allege a violation of federal law.

the remainder of such rent or any part thereof for any other purpose except for the purpose of repairs necessary to prevent waste of the real property.

. . . .

(3) Equity skimming of real property is a class 5 felony.

. . . .

(6) The provisions of this section shall not apply to any bona fide purchaser who acquires fee title in any real property without agreeing to pay all underlying encumbrances and takes fee title subject to all underlying encumbrances, if the following written, verbatim warning was provided to the seller in capital letters of no less than ten-point, bold-faced type and acknowledged by the seller's signature:

**WARNING: PURCHASER, \_\_\_\_, WILL NOT ASSUME OR PAY ANY PRESENT MORTGAGE, DEEDS OF TRUST, OR OTHER LIENS OR ENCUMBRANCES AGAINST THE PROPERTY. THE SELLER, \_\_\_\_, UNDERSTANDS HE/SHE WILL REMAIN RESPONSIBLE FOR ALL PAYMENTS DUE ON SUCH MORTGAGES, DEEDS OF TRUST, OR OTHER LIENS OR ENCUMBRANCES AND FOR ANY DEFICIENCY JUDGMENT UPON FORECLOSURE.**

**I HAVE HAD THE FOREGOING READ TO ME AND UNDERSTAND THE PURCHASER, \_\_\_\_, WILL NOT ASSUME ANY PRESENT MORTGAGES, DEEDS OF TRUST, OR OTHER LIENS OR ENCUMBRANCES AGAINST THE PROPERTY DESCRIBED AS \_\_\_\_.**

**DATE \_\_\_\_ SELLER \_\_\_\_.**

§ 18–5–802, 8B C.R.S. (1991 Supp.).

The respondent admitted that he did not provide Green with the written warning required by section 18–5–802(6), but testified that at the time he entered into the Green transaction he was unaware of the warning requirement imposed by the amendment to the statute. The respondent maintained that the previous version of the equity skimming statute did not apply to bona fide purchasers who acquired fee title in real property without agreeing to pay all underlying encumbrances and who took fee title subject to any underlying encumbrances. *See* § 18–5–802(6), 8B C.R.S. (1988 Supp.).[3] The respondent further contended that he made no misrepresentations to anyone about what he was doing and what he would do, and claimed that neither Green nor any other property owner was harmed by his conduct.

The hearing board concluded that the respondent "adopted a conscious scheme to take ownership of homes, collect rents from tenants, make virtually no efforts to sell the homes and permit foreclosures to occur on which HUD would absorb the losses." In view of this pattern of conduct, the respondent misrepresented the purpose and effect of his property acquisition program to prospective sellers. Furthermore, the respondent's practice of failing to apply income generated by properties he purchased to mortgage payments that became due on those properties, thus ensuring that HUD would suffer additional losses on those properties, evidenced additional dishonest conduct. Finally, as we have noted, the respondent admitted that he failed to comply with section 18–5–802(6) when he acquired Green's property.

In view of the findings and conclusions of the hearing board, we conclude that the respondent's conduct violated DR 1–102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and DR 1–102(A)(6) (engaging in conduct adversely reflecting on the lawyer's fitness to practice law). The respondent also violated C.R.C.P. 241.6(5) (any act or omission violating the criminal laws of a state). In view of the nature and extent of the respondent's conduct, his ignorance of the fact that Colorado's equity skimming statute was amended some three weeks

---

**3.** That section then provided as follows:

(6) The provisions of this section shall not apply to any bona fide purchaser who acquires fee title in any real property without agreeing to pay all underlying encumbrances.

prior to the Green transaction is of minor import.

## V

The hearing panel approved the board's recommendation that the respondent be suspended from the practice of law for a period of one year and one day. Under the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1986 & Supp. 1992) (ABA *Standards*), in the absence of aggravating or mitigating factors disbarment is generally warranted when

(a) a lawyer engages in serious criminal conduct, a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft ... or

(b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.

ABA *Standards* 5.11. However, suspension is appropriate when "a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice." ABA *Standards* 5.12. The hearing board concluded that while the respondent's violation of section 18–5–802 did not fall within the serious criminal misconduct defined in ABA *Standards* 5.11, it did seriously adversely reflect on his fitness to practice law. *Id.* at 5.12.

The hearing board also found the following aggravating factors: the existence of a pattern of misconduct, *id.* at 9.22(c); multiple offenses, *id.* at 9.22(d); and a refusal to acknowledge the wrongful nature of his conduct, *id.* at 9.22(g). The only factor found in mitigation was the absence of any prior disciplinary proceedings, *id.* at 9.32(a). Given the seriousness and extent of the respondent's misconduct, and the additional aggravating factors found present by the hearing board, a period of suspension for a period of one year and one day with its requirement of a petition for reinstatement, *see* C.R.C.P. 241.22(b)–(d), constitutes an appropriate sanction, as recommended by the hearing board and the hearing panel.

## VI

It is hereby ordered that the respondent, James W. Phelps, be suspended from the practice of law for one year and one day, effective immediately upon the issuance of this opinion. *See* C.R.C.P. 241.21(a). It is further ordered that the respondent shall comply with C.R.C.P. 241.22(b)–(d) before he may be reinstated. The respondent is also ordered to pay the costs of this proceeding, in the amount of $475.94, to the Supreme Court Grievance Committee, Suite 500–S, Dominion Plaza, 600—17th Street, Denver, Colorado 80202–5435, within sixty days of the date of this opinion.