The PEOPLE of the State of Colorado, Complainant,

v.

Thomas J. KOLLER, Attorney–Respondent.

No. 94SA90.

Supreme Court of Colorado,
En Banc.

May 2, 1994.

Linda Donnelly, Disciplinary Counsel, James C. Coyle, Asst. Disciplinary Counsel, Denver, for complainant.

Thomas J. Koller, pro se.

PER CURIAM.

A hearing board determined that the respondent[1] in this attorney disciplinary proceeding engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, and that he conveyed real property in order to hinder, delay, or defraud creditors. The board recommended that the respondent be suspended from the practice of law for six months, be required to petition for reinstatement, and provide reasonable restitution. A hearing panel of the Supreme Court Grievance Committee approved the board's factual findings, but modified the recommendation of discipline to suspension for one year and one day, and revised the restitution requirement. Neither the respondent nor the assistant disciplinary counsel has excepted to the panel's action. We accept the panel's recommendation.

I

Based on the evidence presented at the hearing, the board found that the following facts had been established by clear and convincing evidence.

1. The respondent was admitted to the bar of this court on October 1, 1971, is registered as an attorney upon this court's official records, and is subject to the jurisdiction of this court and its grievance committee in these proceedings. C.R.C.P. 241.1(b).

In 1985, the respondent represented Joseph A. Romero, Jr., in a workers' compensation claim. In June 1987, Romero filed a legal malpractice action against the respondent and obtained a judgment in his favor against the respondent in the amount of $200,000 plus prejudgment interest from October 1985.

The judgment was entered on September 14, 1989. One day later, the respondent prepared and executed a warranty deed conveying the respondent's interest in certain real property located in Boulder County to his wife. The real property was the respondent's home, and the deed was recorded on September 18, 1989. Although the warranty deed recites that the respondent's wife paid him $10,000 for the transfer, no consideration was in fact paid.

The respondent did not answer a letter from Romero's lawyer requesting payment of the judgment, and the respondent did not make any payments to Romero. In his March 14, 1990, response to post-judgment interrogatories pursuant to C.R.C.P. 69(d), the respondent indicated that he owned his residence, stated that its value was $120,000, and that there was a balance owing on a mortgage in the amount of $92,005.78.

The respondent filed for bankruptcy in the United States Bankruptcy Court, District of Colorado, on August 4, 1992. In his voluntary bankruptcy petition and the accompanying schedules, the respondent asserted that he had no legal, equitable, or future interest in any real property, although he stated that he owed one-half of a debt in the amount of $88,537. This debt was listed as being secured by the Boulder County real property. The respondent also estimated his assets as less than $50,000. He estimated that his liabilities were between $100,000 and $499,-000, and indicated that there would be no funds available for distribution to unsecured creditors.

The respondent testified that after the entry of the judgment but before the transfer of the property to his wife, he discussed how he might preserve his assets with an acquaintance who was also an attorney. That attorney, who was not the respondent's bankruptcy lawyer, testified that he informed the respondent that such a transfer was one possible course of action. The attorney stated that in his opinion such a transfer would not be fraudulent and would be valid unless it was set aside. He also testified that he told the respondent that for the transfer to be set aside it would first have to be discovered and a lawsuit would have to be filed within the statutory time limit. According to the attorney, in order for the transfer to be set aside, it would also have to be shown that the respondent was insolvent at the time of the transfer and that there was an intent on the part of both the respondent and his wife to hinder, delay, or defraud creditors.

The board rejected the respondent's attempt to defend the transfer by asserting that it was made on the attorney's advice, and concluded that the respondent fraudulently conveyed his interest in the Boulder County property to protect it from Joseph A. Romero, Jr., contrary to section 38–10–117, 16A C.R.S. (1982).[2]

At a meeting of the creditors in the bankruptcy proceeding in September 1992, the respondent admitted that one of the considerations for transferring the property to his wife was to avoid paying Romero's judgment. The respondent later wrote to his bankruptcy lawyer that the bankruptcy trustee was going to attempt to set aside the transfer and he instructed the lawyer to reach a settlement to avoid litigation over the transfer.

---

2. Section 38–10–117, 16A C.R.S. (1982), which applied when the respondent conveyed his interest in the Boulder County property to his wife, provided:

38–10–117. **Conveyances to defraud creditors void.** Every conveyance or assignment in writing or otherwise of any estate or interest in lands, goods, or things in action or of any rents and profits issuing thereupon, and every charge upon lands, goods, or things in action or upon the rents and profits thereof made with the intent to hinder, delay, or defraud creditors or other persons of their lawful suits, damages, forfeitures, debts, or demands, and every bond or other evidence of debt given, suits commenced, or decree or judgment suffered with the like intent as against the person so hindered, delayed, or defrauded shall be void.

The bankruptcy trustee filed an adversary proceeding to set aside the transfer, but the complaint was withdrawn when the respondent and his wife executed a stipulation agreeing to a sale of the property and to a surrender of the net proceeds of the sale less a $30,000 homestead allowance.

The respondent received a discharge in the bankruptcy proceeding dated August 9, 1993. The case has not been closed, however, and the testimony was that Romero would receive a pro rata share of any monies available to unsecured creditors from assets recovered by the trustee. The respondent admitted that he has never voluntarily paid any money to satisfy the judgment, although Romero has recovered slightly in excess of $1,000 as a result of garnishments of the respondent's bank account.

The hearing board concluded that the conduct detailed above violated DR 1–102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); and DR 1–102(A)(6) (a lawyer shall not engage in conduct that adversely reflects on the lawyer's fitness to practice law).

## II

■ The hearing panel considered the board's recommendation of a six-month suspension too lenient, and modified the period of suspension to one year and one day. The respondent did not except to the panel's modified recommendation.

We disbarred the lawyer in *People v. Bennett*, 843 P.2d 1385 (Colo.1993), for, among other things, conveying property with intent to hinder, delay, or defraud creditors. The misconduct in *Bennett* was more extensive than in this case, however, and the attorney had a more serious disciplinary history. 843 P.2d at 1386–87.

■ In *People v. Phelps*, 837 P.2d 755 (Colo.1992), we suspended the attorney for one year and one day for violating the equity-skimming statute. Although the practice of equity-skimming of real property is a class 5

felony, § 18–5–802(3), 8B C.R.S. (1993 Supp.), there was no indication in *Phelps* that the attorney was criminally prosecuted. We believe that an attorney's violation of the fraudulent conveyance statute to hinder, delay, or defraud a legal malpractice judgment creditor constitutes professional misconduct as serious as equity skimming. We also note that, unlike the attorney in *Phelps*, 837 P.2d at 759, the respondent in this case has a disciplinary history, having previously received three letters of admonition. *See* ABA *Standards for Imposing Lawyer Sanctions* 9.22(a) (1991 & Supp.1992) (prior discipline constitutes an aggravating factor).[3] In mitigation, the respondent fully cooperated with the board in these proceedings. *Id.* at 9.32(e). We conclude that suspension for one year and one day, together with the conditions for reinstatement recommended by the hearing panel, are appropriate sanctions, and we accept the panel's recommendation.

## III

Accordingly, it is hereby ordered that Thomas J. Koller be suspended from the practice of law for one year and one day, commencing thirty days after the issuance of this opinion. Koller must undergo reinstatement proceedings pursuant to C.R.C.P. 241.-22(b)–(d). It is further ordered that any application for reinstatement must be supported by clear and convincing evidence that the respondent has entered into an agreement with Joseph A. Romero, Jr., for satisfactory restitution to Romero. It is further ordered that the respondent pay the costs of this proceeding in the amount of $294.74 within thirty days after the announcement of this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 920–S, Dominion Plaza, Denver, Colorado 80202.

---

3. In addition to the prior discipline, the hearing board found the following factors in aggravation: (1) a dishonest or selfish motive, ABA *Standards for Imposing Lawyer Sanctions* 9.22(b); (2) sub-stantial experience in the practice of law, *id.* at 9.22(i); and (3) indifference to making restitution, *id.* at 9.22(j).