The PEOPLE of the State of
Colorado, Complainant,

v.

D. Dean EASTEPP, Attorney–
Respondent.

No. 94SA80.

Supreme Court of Colorado,
En Banc.

Nov. 7, 1994.

Linda Donnelly, Disciplinary Counsel, James C. Coyle, Assistant Disciplinary Counsel, Denver, for complainant.

Lee R. Wills, Colorado Springs, for attorney-respondent.

PER CURIAM.

A hearing panel of the Supreme Court Grievance Committee approved the findings of the majority of a hearing board that the respondent[1] had violated DR 1–102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); DR 1–102(A)(6) (a lawyer shall not engage in conduct that adversely reflects on the lawyer's fitness to practice law); C.R.C.P. 241.6(3) (misconduct involving any act or omission violating the highest standards of honesty, justice or morality is grounds for discipline); and C.R.C.P. 241.6(5) (any act or omission violating the criminal laws of a state or of the United States constitutes ground for lawyer discipline). The panel also approved the board's recommendation that the respondent be suspended from the practice of law for three months and be assessed costs. The parties excepted to the panel's findings and recommendation of discipline. After examining the record as a whole, we determine that the panel's findings are supported by substantial evidence, and we accept them. *People v. Tucker*, 837 P.2d 1225, 1228 (Colo.1992). We also accept the panel's recommendation and order that the respondent be suspended for three months and pay costs.

I

The board heard testimony from the complainant's and respondent's witnesses and from the respondent. Based on the testimony and the exhibits introduced into evidence, the board found that the following facts had been established by clear and convincing evidence.

The respondent was the president of Colorado Concrete Manufacturing Company (CCMC) in Colorado Springs. He owned

1. The respondent was admitted to the bar of this court on May 17, 1976, is registered as an attorney upon this court's official records, and is subject to the jurisdiction of this court and its grievance committee in these proceedings. C.R.C.P. 241.1(b).

twenty-six percent of the shares of CCMC, and the remaining shares were owned by Mr. and Mrs. Don Hogue of Topeka, Kansas, the parents of the respondent's former wife. The respondent had been previously involved in two other companies with the Hogues, and he sold his shares in those companies to the Hogues at book value.

In 1980, the respondent and the Hogues executed a buy and sell agreement, which allowed CCMC to purchase the stock of a deceased stockholder, and which was to be funded by the proceeds of life insurance policies that CCMC purchased for each stockholder. The Hogues also executed personal guarantees on loans made to CCMC. The hearing board found that, upon the Hogues' deaths, their interest in CCMC would be purchased by CCMC with the respondent as the remaining shareholder, but the Hogues' estates would remain liable for the indebtedness.

From 1980 through 1989, CCMC operations expanded three-fold, and the respondent earned a good business reputation. In 1989, however, CCMC experienced severe financial difficulties due to decreasing construction in the Colorado Springs area. The company remained solvent because the Hogues infused money into the business. The Hogues became concerned, however, about the increased indebtedness of the company for which they were liable. With the advice and active involvement of their lawyer, they asked the respondent to terminate the buy and sell agreement. The respondent steadfastly refused and the relationship between the respondent and the Hogues deteriorated.

The Hogues hired a consultant to review CCMC's finances, who recommended that the company sell assets, including three company vehicles. The Hogues and their lawyer instructed the respondent in May 1989 to sell the vehicles, one of which was a 1985 Lincoln Continental Town Car that the respondent was using as a company car. The blue book value of the Lincoln was approximately $9,000.

Instead of selling the vehicles as instructed, the respondent and a relative (another CCMC employee), took them to an automobile dealer in order to have titles created showing a transfer of the vehicles to the dealer. The respondent signed assignments of title showing transfers of the vehicles to an automobile auction company in May 1989. The respondent then engaged in a transaction designed to appear as if a third party purchased the Lincoln from the dealer for $500. The respondent sent a letter to the consultant, with copies to Mr. Hogue and his lawyer, indicating that he had disposed of the vehicles as instructed.

The respondent in fact retained possession of the Lincoln, and put about 500 miles on the car before he placed it on a consignment lot. The respondent's relative and another CCMC employee kept the other two vehicles, which had been their company cars. In August 1989, the respondent told his relative to modify certain documents and to have the three vehicles titled and recorded in the names of three other persons so that the respondent and the other CCMC employees would not appear as the vehicle owners in any public documents.

The relationship between the Hogues and the respondent did not improve, and the respondent's employment was terminated in early August 1989. The Hogues denied liability for unemployment benefits and refused to pay the respondent any pension benefits. The respondent was later awarded unemployment benefits, and a referee for the Division of Employment and Training concluded that the respondent was forced to quit because of the pressure exerted by the Hogues regarding the company's finances and the buy and sell agreement.

The respondent repeatedly informed the Hogues and their lawyer that he had sold the Lincoln to the automobile auction company. Because the purported purchase price was far less than the actual value of the vehicle, however, the Hogues hired a private investigator, who found the Lincoln for sale on the consignment lot for $10,000. The investigator also discovered that the Lincoln had been placed on the consignment lot by the respondent, although it was titled in the name of a third person. The Hogues' lawyer asked the district attorney in Colorado Springs to investigate the matter, and in about September

of 1989 the respondent admitted to the detective assigned to the case that he had never sold the vehicles. The respondent subsequently returned the Lincoln to CCMC, and it was later sold for $7,500. The district attorney elected not to file criminal charges against the respondent.

In addition, shortly after he left CCMC, the respondent gained access to the company offices after business hours and took some original financial statements. He had asked for copies of those statements before, but they had not been provided. About a week after he took them, the respondent returned the documents before the company discovered they were missing.

The respondent admitted, and the hearing board found, that the foregoing conduct violated DR 1–102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); and DR 1–102(A)(6) (a lawyer shall not engage in conduct that adversely reflects on the lawyer's fitness to practice law). The hearing board also determined that the respondent violated C.R.C.P. 241.6(3) (misconduct involving any act or omission violating the highest standards of honesty, justice or morality is grounds for discipline).

In addition, the hearing board concluded that the respondent's conduct violated C.R.C.P. 241.6(5). The fact that no criminal charges were filed against the respondent would not preclude a finding that he had violated C.R.C.P. 241.6(5) (any act or omission violating the criminal laws of a state or of the United States constitutes ground for lawyer discipline; provided that conviction thereof in a criminal proceeding shall not be a prerequisite to the institution of disciplinary proceedings, and provided further that acquittal in a criminal proceeding shall not necessarily bar disciplinary action); *People v. Morley*, 725 P.2d 510, 514 (Colo.1986) (conviction of criminal offense is not a condition precedent to attorney disciplinary proceedings involving the offense, nor is acquittal a bar). The majority of the board found that the respondent violated the felony theft and felony aggravated motor vehicle theft statutes.

The respondent excepted to the above findings on the ground that while the evidence may have demonstrated that the respondent deceived the Hogues, he did not possess the felonious intent necessary to violate the felony theft and felony aggravated motor vehicle theft statutes. The respondent's exceptions followed the findings of the one dissenting member of the hearing board.

The applicable theft statute was section 18–4–401, 8B C.R.S. (1986 & Supp.1990), which provided, in part:

(1) A person commits theft when he *knowingly* obtains or exercises control over anything of value of another without authorization, or by threat or deception, and:

(a) Intends to deprive the other person permanently of the use or benefit of the thing of value; or

(b) *Knowingly* uses, conceals, or abandons the thing of value in such manner as to deprive the other person permanently of its use or benefit; or

(c) Uses, conceals, or abandons the thing of value intending that such use, concealment, or abandonment will deprive the other person permanently of its use and benefit; or

(d) Demands any consideration to which he is not legally entitled as a condition of restoring the thing of value to the other person.

(1.5) For the purposes of this section, a thing of value is that of "another" if anyone other than the defendant has a possessory or proprietary interest therein.

§ 18–4–401, 8B C.R.S. (1986 & Supp.1990) (emphasis). The aggravated motor vehicle theft statute provided in relevant part:

(2) A person commits aggravated motor vehicle theft in the first degree if he *knowingly* obtains or exercises control over the motor vehicle of another without authorization or by threat or deception and:

(a) Retains possession or control of the motor vehicle for more than twenty-four hours . . . .

(3) Aggravated motor vehicle theft in the first degree is a:

(a) Class 4 felony if the value of the motor vehicle or motor vehicles involved is fifteen thousand dollars or less....

§ 18–4–409, 8B C.R.S. (1986 & Supp.1990) (emphasis added).

Section 18–1–501(6), 8B C.R.S. (1986) defines "knowingly":

(6) "Knowingly" or "willfully". All offenses defined in this code in which the mental culpability requirement is expressed as "knowingly" or "willfully" are declared to be general intent crimes. A person acts "knowingly" or "willfully" with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists. A person acts "knowingly" or "willfully", with respect to a result of his conduct, when he is aware that his conduct is practically certain to cause the result.

The minimum culpable mental state required to violate the felony theft and aggravated motor vehicle theft statutes is "knowingly." After examining the record as a whole, we conclude that the board's findings that the respondent's conduct violated the foregoing criminal statutes are supported by substantial evidence, and we accept them. *People v. Tucker,* 837 P.2d 1225, 1228 (Colo.1992) (when approved by the hearing panel, the board's factual findings are binding on the supreme court unless, after considering the record as a whole, the findings are unsupported by substantial evidence).

## II

The hearing panel accepted the recommendation of a majority of the hearing board that the respondent should be suspended for three months. The respondent has excepted to the recommendation, and asserts, as did the one dissenting member of the hearing board, that a public censure is appropriate. The assistant disciplinary counsel also excepted to the panel's recommendation, and maintains that a longer period of suspension is warranted.

Under the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) (ABA *Standards* ), in the absence of mitigating factors, disbarment is appropriate when:

(a) a lawyer engages in serious criminal conduct, a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; ... or

(b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.

ABA *Standards* 5.11. The assistant disciplinary counsel does not contend that the respondent should be disbarred, however, because of the existence of "considerable" mitigating factors.

In mitigation, the hearing board found that the respondent had no prior disciplinary record, *id.* at 9.32(a); that he was experiencing severe emotional stress at the time of the misconduct caused by the repeated unreasonable demands of the Hogues and their lawyer, *id.* at 9.32(c); that he showed a cooperative attitude toward the disciplinary proceedings, *id.* at 9.32(e); and that the respondent had a good character and reputation, *id.* at 9.32(g).

The respondent's ethical violations would ordinarily warrant a longer period of suspension. *See, e.g. People v. Phelps,* 837 P.2d 755 (Colo.1992) (attorney suspended for one year and one day for violating equity-skimming statute, a class 5 felony). The events here seem to be an aberration in the respondent's otherwise good conduct of his business responsibilities. Except for delay, little or no harm was caused to the company. Therefore, we conclude that the unique and substantial mitigating circumstances that are present in this case make a long period of suspension unnecessary to protect the public. Accordingly, we accept the hearing panel's recommendation.

## III

It is hereby ordered that D. Dean Eastepp be suspended for three months, effective thirty days after the issuance of this opinion. *See* C.R.C.P. 241.21(a). It is further ordered

that Eastepp pay the costs of this proceeding in the amount of $2,651.90 within 90 days after the announcement of this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 920–S, Denver, Colorado 80202.

1. The respondent was admitted to the bar of this court on October 19, 1981, is registered as an

