In the Matter of Kallman S. **ELINOFF**,
Attorney–Respondent.

No. 00SA268.

Supreme Court of Colorado,
En Banc.

March 26, 2001.

As Modified on Denial of Rehearing
April 30, 2001*.

William Kelso, Harvey Steinberg, Springer & Steinberg, Denver, CO, Attorneys for Attorney–Appellant.

John S. Gleason, Attorney Regulation Counsel, Nancy L. Cohen, Deputy Regulation Counsel, Debora D. Jones, Asst. Regulation Counsel, Denver, CO, Attorneys for Complainant–Appellee.

Justice KOURLIS delivered the Opinion of the Court.

This is an appeal of an attorney regulation case tried before the presiding disciplinary judge (PDJ) and a hearing board. The PDJ and one member of the board initially concluded that the attorney-respondent (appellant in this court), Kallman S. Elinoff, should be disbarred for attempting to bribe two police officers. The third member of the board dissented on the sanction, contending that a two-year suspension plus probation was adequate. On rehearing, the board affirmed its previous findings of fact, but modified the sanction to a three-year suspension, with one year suspended and with Elinoff placed on probation. Elinoff appealed the case to the appellate discipline commission, but, upon the elimination of the ADC, *see* C.R.C.P. 251.24, 12 C.R.S. (2000) (repealed effective September 1, 2000), the appeal was transferred to this court. We affirm the hearing board's opinion and order imposing sanctions.

---

* Chief Justice MULLARKEY and Justice MARTINEZ would grant the petition; Justice BEND-

ER does not participate.

## I.

Elinoff was admitted to practice law in Colorado in 1989. The complaint filed by the attorney regulation counsel charged Elinoff with conduct constituting the criminal offense of bribery, a class three felony,[1] thus violating C.R.C.P. 241.6(5) (committing a criminal offense), and with engaging in other conduct adversely reflecting on his fitness to practice, Colo. RPC 8.4(h).[2]

The hearing board found that on March 17, 1998, Elinoff represented Douglas Rathbun in a county court hearing on felony charges.[3] At the conclusion of the hearing, two Denver detectives—David Ollila and Michael Mullen—arrested Elinoff's client on unrelated domestic violence charges. Rathbun became upset and pleaded with the officers not to take him to jail right then because his girlfriend (the alleged victim in the domestic violence case) was scheduled to be sentenced to prison soon and he wanted to see her before she went. The detectives refused to let him go, but allowed him to smoke outside the courthouse. While the four of them were outside, and his client continued to plead with the officers, Elinoff struck up an informal conversation with them, although they had never met before. At one point, Elinoff told the detectives that they needed to talk about his client at a level they could all understand. He reached into his shirt pocket and removed several bills of currency (including a $100 bill), extended them toward Mullen, and stated that if the detectives would forget the matter for the day, his client would turn himself in the next day. Mullen told Elinoff that his conduct was unacceptable, and the detectives took Rathbun to jail. Elinoff himself was not arrested, nor

was he charged with violation of any criminal law. The next day he went to police headquarters to apologize for his conduct, and did apologize to Ollila, but Mullen was not available.

At the hearing, Elinoff testified that he was joking when he offered the money to the officers, and that he did it to show Rathbun that nothing could prevent his going to jail. However, the hearing board found that "Elinoff intended by this conduct to influence the decision made by Ollila and Mullen to jail Rathbun."

The board found that Elinoff's conduct constituted the offense of bribery, and that the presumed sanction for a lawyer committing bribery was disbarment. ABA *Standards for Imposing Lawyer Sanctions* 5.11(a) (1991 & Supp.1992) ("Disbarment is generally appropriate ... when a lawyer engages in serious criminal conduct a necessary element of which includes intentional interference with the administration of justice ...."); *id.* at 7.1 ("Disbarment is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system.").

The hearing board found no aggravating factors. *See id.* at 9.22. In mitigation, all three members of the board found that Elinoff did not have a previous history of discipline, *see id.* at 9.32(a), that he cooperated in the proceedings, *see id.* at 9.32(e), and that there was evidence of his good character and reputation, *see id.* at 9.32(g). One member

---

1. Section 18–8–302, 6 C.R.S. (2000), provides in part:
   **Bribery.** (1) A person commits the crime of bribery, if:
   (a) He offers, confers, or agrees to confer any pecuniary benefit upon a public servant *with the intent to influence the public servant's vote, opinion, judgment, exercise of discretion, or other action in his official capacity;* ...
   . . . .
   (3) Bribery is a class 3 felony.
   (Emphasis added.)

2. The PDJ granted Elinoff's motion to dismiss the charge that he also violated Colo. RPC 3.5(a)

(seeking "to influence a judge, juror, prospective juror or other public official by means prohibited by law"). The complainant has not appealed this dismissal.

3. There was evidence in the record that on the day of the county court hearing, Elinoff was taking prescription medication for an injury he had sustained. Although the medication had some effect on Elinoff's demeanor, the county court went ahead with the hearing and Elinoff does not claim that his taking of the medication caused his misconduct that day.

of the hearing board found additional mitigating factors: that Elinoff did not have a dishonest or selfish motive, *see id.* at 9.32(b); he made a timely good faith effort to rectify the consequences of the misconduct by apologizing to the officers the next day, *see id.* at 9.32(d); Elinoff did *not* argue that he was under the influence of a medication he was taking on the day of the misconduct, but rather told the truth, *cf. id.* at 9.32(h); and he expressed remorse for his misconduct, *see id.* at 9.32(*l* ). Finding insufficient factors in mitigation to call for a sanction less than disbarment, the PDJ and one member of the board concluded that Elinoff be disbarred. Another board member, while accepting the findings, believed that disbarment was too severe, and that a two-year suspension plus probation was adequate.

On rehearing, the board reaffirmed its prior findings, specifically that Elinoff committed bribery. However, additional character evidence that Elinoff introduced at the rehearing, "and Elinoff's dramatically different attitude apparent during the [rehearing] ... established by clear and convincing evidence that Elinoff is genuinely remorseful for this single episode of misconduct, and that any recurrence of similar misconduct is very unlikely." The board amended its original order disbarring Elinoff to a three-year suspension "with one year of the suspension period stayed while Elinoff is placed on probation pursuant to C.R.C.P. 251.7 for a period of one year . . . ." Elinoff filed a notice of appeal to the ADC and the case was later transferred here.

## II.

On appeal, Elinoff first maintains that the board erred when it concluded that he had committed bribery. In particular, Elinoff contends that he lacked the specific intent necessary to commit bribery, because he intended only to convince his client that nothing could be done to effect his release. Assuming that the hearing board's finding that he committed bribery is reversed, Elinoff argues that the sanction imposed is manifestly excessive. Finally, Elinoff asserts that even if he did commit bribery, the sanction imposed bears no relation to the misconduct

and is manifestly excessive. We examine his first contention first.

### A.

■ At the hearing, Elinoff testified as follows:

Q: What was the officer's reaction [after Elinoff offered money to the officers]?

A: Officer Mullen was the one closest to me, and he said, you have been here long enough to know that's inappropriate. And I assumed that he meant that it was an inappropriate joke. That's the way I intended it, and that's what he said. I apologized to the officers. . . .

Q: What would you have done if they had taken the money?

A: You know I would have been in shock. To be honest, I can't imagine what I would have done. . . .

And I guess if the officers would have taken it, I would have tried to get my money back, because it was my money, and I don't give away money. . . .

And if he had actually taken it and walked away and uncuffed my client, I probably would have called the police and had him arrested for taking a bribe. That's how ludicrous it kind of became in my mind.

■ As the board noted, the fact that Elinoff was neither charged nor convicted with a criminal offense does not prevent him from being disciplined for violating a criminal law. C.R.C.P. 251.5(b). The board found that "Elinoff offered money to Detective Mullen and Detective Ollila to release Elinoff's client from custody. . . . *Although Elinoff characterized the offer as a joke, the evidence established that it was his intent to influence the detectives to exercise their discretion and release Elinoff's client.*" (Emphasis added.) The board continued:

Elinoff testified on direct examination that he offered money to the police officers and asked them to release his client. He admitted that his purpose, or motive, in doing so was to prove to his client that the detectives would not release his client. *Elinoff's testimony leaves no doubt that his intent in offering the money to the officers*

*was an attempt to convince them to release his client from custody.* His belief that they would not do so does not alter his intent, it merely bears upon the potential of success. Although Elinoff's motive may have been to prove to his client that nothing he could do would prevent the officers from transporting the client to jail, *Elinoff's offer of money was unmistakably an effort to influence the detectives' decision to jail the client.* It establishes the requisite intent required under § 18–8–302(1)(a), 6 C.R.S. (1998). Whether his motive is characterized as joking or serious, Elinoff's offer of money to the officers to release his client was bribery.

(Emphasis added.) Bribery is a specific intent offense. "A person acts 'intentionally' or 'with intent' when his conscious desire is to cause the result proscribed by the statute defining the offense. It is immaterial to the issue of specific intent whether or not the result actually occurred." § 18–1–501(5), 6 C.R.S. (2000); *see also People v. DeHerrera,* 697 P.2d 734, 741 (Colo.1985) (a person acts with "specific intent" when the person's conscious objective is to cause the result proscribed by the statute).

■ The complainant argues that there is substantial evidence in the record to support the hearing board's conclusion that Elinoff had the specific intent necessary to commit the offense of bribery. We agree. As the factfinder, the hearing board has the duty to assess the credibility of the witnesses and testimony. *People v. Casey,* 948 P.2d 1014, 1017 (Colo.1997). We will not overturn their factual findings unless they are clearly erroneous and are not supported by substantial evidence in the record. *In re Quiat,* 979 P.2d 1029, 1038 (Colo.1999); *see also* C.R.C.P. 251.27(b)(setting out the appellate standard of review in attorney regulation cases).

Our independent review of the record convinces us that the hearing board was free to decide the issue of credibility and find that Elinoff actually intended to persuade the offi-

cers to free his client. And a fair reading of *all* of the board's findings supports the view that this is precisely what they did: "Although Elinoff characterized the offer as a joke, the evidence established that it was his intent to influence the detectives to exercise their discretion and release Elinoff's client." Moreover, Elinoff made the same argument to the hearing board on rehearing that he makes in this court. The hearing board nevertheless reaffirmed its original finding that Elinoff had the specific intent to commit bribery:

> Taking into account the demeanor of the witnesses in this case as exhibited at trial, assessing the credibility of those witnesses and considering the additional character testimony submitted in the deposition transcripts, the PDJ and Hearing Board reaffirm their factual finding that Elinoff had the requisite specific intent required under § 18–8–302(1)(a), 6 C.R.S. (1998).

The board's conclusion is supported by substantial evidence in the record and we will not overturn it.

**B.**

■ C.R.C.P. 251.27(b) provides that this court will affirm the form of discipline imposed by the hearing board, unless it "(1) bears no relation to the conduct, (2) is manifestly excessive or insufficient in relation to the needs of the public, or (3) is otherwise unreasonable."[4]

Elinoff claims that even if the board's finding that he committed the offense of bribery is sustained, the sanction that the board imposed is still manifestly excessive and unreasonable. He requests that the sanction the board imposed be vacated in favor of a suspension not to exceed three months.

He first urges us to reduce the sanction for the reasons expressed in the dissenting board member's opinion. Primarily, these reasons arise from the additional factors in mitigation that the dissenting member found that the majority did not, the fact that at the

---

4. In his second issue on appeal, Elinoff asserts that because he did not have the specific intent to commit bribery, and thus did not commit the offense of bribery, the sanction imposed bears no relation to his conduct and is therefore manifestly excessive and unreasonable. Because we affirm the board's finding that Elinoff *did* commit bribery, this objection is moot.

hearing the complainant sought only a thirty-day suspension, and from the absence of any factor in aggravation. However, even taking this into account, the dissenting member recommended that Elinoff be suspended for two years, followed by a period of probation. This is effectively what the hearing board did when it modified the sanction to a three-year suspension, with one year suspended, to be served on probation.

Second, Elinoff argues that the sanction in this case is much more severe than that in similar cases of misconduct. He relies primarily on our decision in *People v. Bronstein*, 964 P.2d 514 (Colo.1998), to support this proposition. The lawyer-respondent in *Bronstein* failed to turn over attorney fees that he received that were the property of his law firm. *Id.* at 515–16. We accepted a conditional admission in which the complainant and the respondent stipulated that suspension for a year and a day was appropriate. *Id.* at 517. Elinoff asserts that Bernstein's conduct was at least as aggravated as his, and that the sanction in this case, compared to that in *Bronstein*, is manifestly excessive. However, we overruled *Bronstein* in *In re Thompson*, 991 P.2d 820, 823 (Colo.1999), "to the extent that it suggests that disbarment is not the presumed sanction when a lawyer knowingly misappropriates funds."

He also cites three other attorney-regulation cases in which the respondents engaged in serious criminal conduct, but received less serious sanctions than in this case: *People v. Barnthouse*, 948 P.2d 534 (Colo.1997) (year and a day suspension); *People v. Eastepp*, 884 P.2d 305 (Colo.1994) (three months); and *People v. Koller*, 873 P.2d 761 (Colo.1994) (year and a day).

The lawyer in *Barnthouse* stole three pairs of eyeglass frames from a store. 948 P.2d at 537. In aggravation, the board found that Barnthouse submitted false evidence during the disciplinary hearing. *Id.* at 538. The hearing panel rejected the hearing board's recommendation of a six months' suspension in favor of a year and a day. *Id.* at 537. In determining the appropriate sanction in *Barnthouse*, we cited ABA *Standards, supra*, 5.11(a) for the proposition that, in the absence of mitigating factors, disbarment is generally appropriate when "a lawyer engages in serious criminal conduct a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft." For lawyer regulation purposes, a "serious crime" is defined as "(1) [a]ny felony; and (2)[a]ny lesser crime a necessary element of which, as determined by its statutory or common law definition, involves interference with the administration of justice, false swearing, misrepresentation, fraud, willful extortion, misappropriation, or theft." C.R.C.P. 251.20(e). Bribery is a class 3 felony. § 18–8–302(3). It therefore satisfies the definition of a serious crime under either C.R.C.P. 251.20(e)(1) or (2). ABA *Standards, supra*, 5.11(a) is therefore applicable in this case.

In approving the recommendation of a year and a day, however, we acknowledged that we had imposed suspensions, rather than disbarments, in cases presenting similar facts. *Barnthouse*, 948 P.2d at 537 (citing *Eastepp*, 884 P.2d at 308; *Koller*, 873 P.2d at 763; *People v. Phelps*, 837 P.2d 755, 759 (Colo.1992); and *People v. Kolbjornsen*, 917 P.2d 277, 279 (Colo.1996)). None of these cases involved bribery, however. *Barnthouse*, 948 P.2d at 537, and *Eastepp*, 884 P.2d at 307–08, involved theft; *Koller*, 873 P.2d at 763, involved violation of the fraudulence conveyance statute; and the lawyer in *Phelps*, 837 P.2d at 759, violated the equity-skimming statute. The respondent in *Kolbjornsen*, who was suspended for a year and a day, testified falsely under oath. 917 P.2d at 279.

Bribery is at least as serious an offense as any of these, and certainly more serious than theft, equity skimming, or fraudulently conveying. It is a crime that strikes at the heart of a lawyer's duty to uphold the administration of justice. Elinoff's conduct was directly related to his practice of law. Given these differences, we cannot say that the hearing board's sanction was unreasonable, much less manifestly excessive.

## III.

Accordingly, we affirm the hearing board's opinion and order imposing sanctions. The

stay of execution previously issued by the PDJ is hereby dissolved.

Justice BENDER does not participate.

Justice MARTINEZ dissented with opinion in which MULLARKEY, C.J., joined.

Justice MARTINEZ dissenting:

The majority holds that the hearing board concluded that Elinoff had the specific intent to commit bribery and that there was substantial evidence in the record to support this conclusion. While I agree there is substantial evidence to support such a conclusion, I believe it is unclear whether that is the conclusion reached by the hearing board. The board's opinion is ambiguous and does not reveal whether the hearing board believed Elinoff's testimony that he was only joking and attempting to teach his client a lesson. Thus, this case should be remanded to the hearing board to clarify its findings. Accordingly, I respectfully dissent.

I agree with the majority that it is the board's responsibility to measure the weight of the evidence and resolve the credibility of the witnesses in attorney discipline cases. *People v. Robnett*, 859 P.2d 872, 877 (Colo. 1993). Moreover, factual findings of the board are binding on this court unless, upon review of the record as a whole, the findings are unsupported by substantial evidence. *People v. Garnett*, 725 P.2d 1149, 1152 (Colo. 1986).

Here, the board's opinion leaves questions about whether the board found Elinoff's testimony completely credible and in fact believed that Elinoff was joking. Moreover, it appears that the board may have believed, somewhat inconsistently, that Elinoff was joking yet still had the specific intent to commit bribery. If the board believed that Elinoff was, in fact, only joking when he offered money to the officers, then the board could not have logically found that he had the specific intent to commit bribery.

Similarly, it is not clear whether the board found Elinoff's testimony at least partly incredible. Since the board found that Elinoff had the specific intent to commit bribery, it is logical that it found his testimony that he was only joking to be incredible. However, one member of the board wrote separately, concurring in the findings, but dissenting regarding the initial sanction imposed. In

support of a more lenient sanction, this particular board member expressed his opinion that Elinoff made full and free disclosure to the board, admitted that his conduct was inappropriate, and testified truthfully. Moreover, in the board's second opinion, the board concluded that Elinoff's recognition of his misconduct, and other mitigating factors previously presented, warranted reduction of the sanction imposed. Thus, it seems to be an anomaly that the board lauded Elinoff for his credibility, yet must have found that his testimony was at least partly incredible.

The majority cites to a portion of the board's opinion, giving emphasis to certain language in one paragraph that supports the finding of specific intent to commit bribery. *See* maj. op. at 62–63. Specifically, the majority emphasizes the following statements of the board: "Elinoff's testimony leaves no doubt that his intent in offering the money to the officers was an attempt to convince them to release his client from custody.... Elinoff's offer of money was unmistakenly an effort to influence the detectives' decision to jail the client." I agree that these statements are strong support for the majority's interpretation that the board found that Elinoff had the specific intent to commit bribery.

However, when reviewing other statements in that same paragraph, a different interpretation is also possible. Specifically, the board finds:

He admitted that his purpose, or motive, in doing so [offering money to the police] was to prove to his client that the detectives would not release his client.... His belief that they would not do so does not alter his intent, it merely bears upon the potential of success.... Elinoff's motive may have been to prove to his client that nothing he could do would prevent the officers from transporting the client to jail.... Whether his motive is characterized as joking or serious, Elinoff's offer of money to the officers to release his client was bribery.

These statements suggest that the board believed that Elinoff's offer of money to the officers was done in order to prove to his client that he would have to go to jail. Such a finding is inconsistent with specific intent to commit bribery. If Elinoff only intended to prove to his client that he was going to

jail, then Elinoff could not also have had the specific intent to actually commit bribery. Similarly, if the board believed that Elinoff was joking about his offer to the police, then it is inconsistent for the board to have found specific intent to commit bribery. Thus, if the board believed Elinoff and found that he was either attempting to prove that his client was going to jail or that he was joking, then the board could not have properly found that Elinoff had the specific intent to commit bribery. Therefore, it is possible that the board did not understand the nature of specific intent to commit bribery. As such, there is some question as to the board's meaning and, thus, the majority's interpretation.

I concede that it is likely that the majority has correctly interpreted the hearing board's decision to have found that Elinoff had the specific intent to commit bribery and was not merely joking with the officers. However, I am concerned that the probability that the majority's interpretation is correct flows more from skepticism about Elinoff's claim that he was joking than from a fair reading of the hearing board's opinion. A serious matter such as the one presented in this case should not be finally resolved while there is uncertainty regarding the correct interpretation of the board's opinion. Instead, this court should render a decision based on the undisputed, actual findings of the board, which are clearly articulated. This can easily be accomplished by simply remanding this case for clarification.

Most importantly, remand of this case for clarification by the board can be accomplished simply and quickly, and is required under the circumstances of this case to ensure that the board's initial findings are what the majority interprets them to be. The simple fact that an interpretation of the board's decision is required in order to render a decision in this case warrants remand and clarification from the board. Accordingly, I would remand this case and request that the board clarify their findings.

MULLARKEY, C.J., joins in the dissent.